(No. 23204.—)

ARTHUR C. DIXON *et al.* Appellees, *vs.* NORMAN B. PITCAIRN *et al.* Receivers, Appellants.

*Opinion filed December 19, 1935.*

N. S. BROWN, L. H. STRASSER, and ADSIT, THOMPSON & HERR, for appellants.

OTTO KERNER, Attorney General, IRVIN ROOKS, HOWARD C. KNOTTS, DAVID AXELROD, WILLIAM S. CAMPBELL, and F. A. ORTMAN, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Norman B. Pitcairn and Frank C. Nicodemus, Jr., receivers of the Wabash Railway Company, have appealed from the order and decree of the circuit court of Livingston county of June 12, 1935, which affirmed the order of the Illinois Commerce Commission of June 20, 1934, in the commission's case No. 22846. Appellants were ordered to re-instate the services of a full-time agent at Manville, Livingston county, and to thereafter maintain that station as a full-time agency.

On November 10, 1933, Arthur C. Dixon and sixty-eight other persons living in or near Manville filed a complaint with the commission alleging that it had on January 10, 1933, in its case No. 21957, entered an order denying the railway company permission to discontinue the non-telegraph agency at Manville and to substitute a caretaker; that a rehearing was granted, and on April 20, 1933, the commission again denied the permission requested. The complaint alleged that on January 22, 1933, the railway company discontinued the full-time agency at Manville and placed that station under the local agent at Cornell, with instructions to make one trip daily to Manville and to remain there from noon until 3 :00 o'clock P. M.; that this violated the commission's order of April 20, 1933, and that the arrangement gives inadequate service, is inconvenient

and works a hardship on patrons in both Manville and Cornell. The prayer was for a hearing and an order that full-time service be restored. An order was entered as prayed on June 20, 1934, after hearings were had. A petition for rehearing was denied. An appeal to the circuit court of Livingston county resulted as above stated, and this appeal followed.

The testimony in support of the complaint was as follows: The manager of the grain elevator at Manville, Iverson, testified that he was inconvenienced by the part-time service because he sometimes failed to get his cars loaded before the agent left Manville, since the witness had to do his banking business in the mornings; that it was inconvenient for him to have to wait until the time the railroad agent was there in the afternoon, which was from 1:00 to 3:00 o'clock. Wilder Hoobler testified that the only freight he received was two tires that were delivered to him by the agent; that he would have been inconvenienced if the agent had not found him; that another consignee was notified by the agent of the arrival of a stove, and that the agent told this witness to tell the consignee that the agent could not stay to deliver the stove. He gave it as his opinion that the service was not adequate but admitted that all his shipments came by truck. Clell Ambrose testified he was the consignee of the stove referred to; that when he called for it he could not get it at first, but that he got it about an hour later at around 3:00 in the afternoon, and that the notice from the agent advised him the latter would be at the station from 1:00 until 3:00 o'clock. Homer E. Crum, the elevator operator at Cornell, and John Shackelton, testified that they could not say the agent's absence from Cornell inconvenienced them or the public.

The total in-bound and out-bound less-than-car-lot shipments at Manville was eight per month. Fifty-six car-loads were shipped from Manville during 1933. Milk shipments

totaled forty-nine gallons that year, and the passenger fares for the year totaled ninety-five cents.

G. H. Sido, appellants' general manager, testified that the Cornell agent of the railroad was directed to spend sufficient time at Manville to take care of the business there; that the arrangement had been made to take care of business arising in the absence of the agent by having him called by telephone at the railroad's expense; that the agent's salary at Manville had been $82.50 per month less ten per cent, and that it took only thirty minutes per week to handle the business at Manville. There was no other testimony that in any way bore upon the question of public convenience and necessity.

Appellants contend that they did not violate the commission's orders in its case No. 21957 and that the findings here are erroneous; that the findings and order are vague and uncertain; that in the light of the evidence these findings are arbitrary and unreasonable and therefore unconstitutional and void, and that they are not supported by the evidence.

The Order of Railroad Telegraphers was permitted to intervene, and it and the other appellees who were complainants contend that the commission is given general regulatory powers over appellants; that the evidence does support the findings and order, and that appellants were required to comply with section 36 of the Public Utilities act (Ill. State Bar Stat. 1935, p. 2495,) by giving thirty days' notice to all parties interested before making this change in service. They also contend that a clear violation of the commission's earlier orders is shown.

Section 36 governs changes in rates but does contain the following language bearing upon changes in service: "Unless the commission otherwise orders, no change shall be made by any public utility in any rate or other charge or classification, or in any rule, regulation, practice or contract relating to or affecting any rate or other charge, classi-

fication or service, or in any privilege or facility, except after thirty days' notice to the commission and to the public as herein provided."

While "service," in section 10 of the Public Utilities act, is given its broadest meaning and includes facilities and commodities furnished, still this section cannot be construed to cover such changes in the method of conducting appellants' business as that shown in this record. The general manager's testimony shows that anyone who found no agent at Manville could call him by telephone at Cornell at appellants' expense; that but thirty minutes per week would be required to transact all the business of the station at Manville, and that, in addition, two or more hours' service per day was furnished at Manville. In *Chicago, Burlington and Quincy Railroad Co.* v. *Commerce Com.* 345 Ill. 576, we held that under section 65 of the Public Utilities act the findings of fact by the Commerce Commission must be specific enough to enable the court to review intelligently the decision of the commission and ascertain if the findings are a reasonable basis for the order, and that the facts found may be re-examined in connection with the evidence but that we will not enter upon an independent investigation of the evidence to develop new facts not found by the commission in order to sustain its findings. In other words, the evidence must support not only the facts found but the order made. Here the evidence does not support the finding that appellants have violated the order which denied them permission to substitute a caretaker and abandon maintenance of a non-telegraph agency at Manville. Adequate service is being rendered and there is no abandonment.

For the reasons stated, the order of the commission and the decree of the circuit court of Livingston county are reversed.

*Order and decree reversed.*