576

(No. 20520.—

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COM-
PANY, Appellant, *vs.* THE COMMERCE COMMISSION *ex rel.*
The Royal Rapid Corporation of Illinois, Appellee.

*Opinion filed October 23, 1931.*

J. C. JAMES, KENNETH F. BURGESS, SIDNEY F. BLANC, JAMES A. GILLEN, and RUSSELL B. JAMES, (BRUCE SCOTT, of counsel,) for appellant.

HENRY C. WARNER, (JOHN H. GARNSEY, and MAURICE F. LENNON, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

The Illinois Commerce Commission granted to the Royal Rapid Corporation of Illinois (hereinafter called the appellee) a certificate of convenience and necessity to operate a motor coach line for the transportation of passengers for hire between Rockford and Mendota. The order of the commission was confirmed by the circuit court of Winnebago county, and appellant, the Chicago, Burlington and Quincy Railroad Company, has prosecuted an appeal to this court.

The first ground of reversal urged is that the findings of fact made by the commission are mere conclusions and generalities and insufficient to sustain the order.

The original application was filed by the Northern Illinois Service Company. During the pendency of the proceedings appellee purchased the property and was substituted for the original applicant. Rockford and Mendota are about sixty miles apart, with Rochelle about midway between them. At the time of the filing of this application appellant operated four trains daily each way between Rockford and Rochelle, through Camp Grant, New Milford, Davis Junction, Holcomb, Kings and Flag Center. The Chicago, Milwaukee and St. Paul Railway Company operated one train daily, except Sunday, between Rockford and Mendota, through Camp Grant, Davis Junction, Holcomb, Kings, Flag Center, Rochelle, Steward Junction, Scarboro, Roxbury and Welland. Five trains a day, and four on Sunday, ran each way between Rockford and Rochelle, and one train each day, except Sunday, ran each way between Rochelle and Mendota. The proposed motor bus route runs south from Rockford on State highway route 70 through New Milford and Rochelle, along the westerly side of Compton to the junction with State highway route 2, which it follows into Mendota. Through Rochelle the route runs for a few blocks on State highway route 6. The proposed route does not pass through any of the villages between Rockford and Rochelle which appellant and the Chicago, Milwaukee and St. Paul Railway Company serve, except New Milford, where it is about a mile from the railroad station. The route lies easterly from the railroad from one to three miles for approximately all of this distance. Between Rochelle and Mendota the route passes through none of the villages served by the Chicago, Milwaukee and St. Paul Railway Company but passes through Compton, a village of about four hundred inhabitants,

which has no direct rail connection with Rochelle, Mendota or Rockford.

The order of the commission found, among other things, that the Northern Illinois Service Company was fully qualified and had proved its ability to become a permanent part of the transportation service in the communities involved, and it had from time to time received from the commission certificates of convenience and necessity to operate over certain routes in northern Illinois; that appellee had previously, by order of the commission, been authorized to purchase all the property of the Northern Illinois Service Company and to substitute its name for the name of the Northern Illinois Service Company in this application; that for a considerable distance between Rockford and Rochelle the proposed motor bus route will operate approximately two miles from appellant's railroad, and from Rochelle to Mendota through the village of Compton there is no adequate transportation service; that the Chicago, Milwaukee and St. Paul Railway Company operates only one train each way between Rochelle and Mendota, and it does not furnish service to the village of Compton or to a large farming community between Rochelle and Mendota adjacent to State highway route 70, which would be served by the granting of appellee's application; that there is considerable passenger traffic between Mendota and Rockford which does not have adequate transportation service; that Rockford is a growing city; that many people residing within the territory proposed to be served desire daily and frequent transportation by bus between their residences and other places along the route; that the territory is without adequate passenger transportation, and that there is a demand for, and public convenience and necessity require, the service sought. The order finds appellee is the owner of sufficient motor vehicles of substantial manufacture and approved form and type complying with the rules of the commission and the laws of Illinois to enable it to render

suitable service to the public. The order requires the furnishing of a bond, after which it provides that a certificate of convenience and necessity issue, that a certified copy of appellee's bond be filed at certain intervals, and that its rate schedules be filed as required.

Section 65 of the Commerce Commission act provides that the commission shall make and enter findings of fact concerning the subject matter inquired into and enter its order based thereon. Such findings must be specific enough to enable the court to review intelligently the decision of the commission and ascertain if the facts on which the commission has based its order are a reasonable basis for the order. The facts found may be re-examined in connection with the evidence, but the court will not enter upon an independent investigation of the evidence to develop new facts not found by the commission in order to sustain its findings. *Kewanee and Galva Railway Co.* v. *Commerce Com.* 340 Ill. 266; *Brotherhood Locomotive Firemen and Enginemen* v. *New York Central Railroad Co.* 339 id. 201; *Business Men's Ass'n* v. *Commerce Com.* 337 id. 149.

The findings of the commission in this case may be divided into two classes: First, the need for the motor bus transportation along the route specified in the order; and second, the particular qualifications of appellee to perform the service. The evidence shows that there are two distinct parts of this route—one from Rockford to Rochelle and the other from Rochelle to Mendota. The order finds that the highway over which appellee proposes to operate its busses between Rockford and Rochelle lies for a considerable distance approximately two miles from appellant's railroad tracks. It finds that there is a territory through which the proposed line passes that is not served by appellant. This being true, it was unnecessary that the finding recite the number of trains which appellant operates daily between Rockford and Rochelle or that its service on its own line is inadequate. The order further finds that from

Rochelle to Mendota there is but one train each way daily over the Chicago, Milwaukee and St. Paul railroad, and it does not furnish service to Compton and to a large farming community adjacent to State highway route 70 which would be served by appellee. Residents of Compton testified that its population was between three hundred fifty and four hundred; that there is no railroad service from Compton to either Mendota or Rochelle; that citizens of Compton go to Mendota and Rochelle to take trains; that many students in the vicinity of Compton attend the township high school in Mendota and the normal school in DeKalb, and that if this bus line were in operation people could go from Compton to Rochelle and take a train for DeKalb; that Compton has no dentist and the bus line would aid its residents in going to consult one, and that there are quite a number of farm residences between Compton and Mendota which have no transportation service.

Twelve witnesses testified. on behalf of appellee as to the public necessity for bus transportation from Rockford to Mendota. They included an implement dealer, a carpenter, an employee in a canning factory, a butcher, three farmers living north of Rochelle, a farmer living east of Holcomb, the proprietor of the general store and the cashier of the bank at Compton, and a real estate agent and a shoe merchant at Mendota. One of these witnesses testified that he had talked to about fifty people who expressed the opinion that this bus line was a convenience and necessity to the people of Mendota. All of these witnesses did not say they would use the bus transportation if it were established. The substance of their testimony was that convenience and necessity required the operation of this line.

Officers of the Northern Illinois Service Company testified as to the incorporation and general standing of their company, its operations conducted throughout the northern part of Illinois and into Wisconsin and Iowa, its equipment, including busses, garage facilities and wait-

ing room accommodations, the care used by their drivers in the operation of the busses, the safety devices used, including air brakes and speed control, and as to the insurance carried for the protection of passengers. Appellee introduced in evidence the order of the Commerce Commission authorizing appellee to purchase the property of the Northern Illinois Service Company. The assistant comptroller and statistician for appellee testified to the preparation by him of a balance sheet showing the assets and liabilities of appellee and showing a profit of more than $8000. He testified that appellee had sufficient equipment to operate busses over the proposed route without the purchase of any additional busses or equipment.

In reviewing the order of the commission this court is limited to a determination as to whether the commission acted within the scope of its authority, whether the order has substantial foundation in the evidence, and whether any substantial right has been infringed by the order. (*Chicago and Eastern Illinois Railway Co.* v. *Commerce Com.* 343 Ill. 117; *Commerce Com.* v. *Chicago and Eastern Illinois Railway Co.* 332 id. 243; *Public Utilities Com.* v. *Springfield Gas Co.* 291 id. 209.) In *Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580, it was held that although it may not appear from the evidence that two-hour passenger service is necessary in a certain community, yet that question is one primarily in the province of the Commerce Commission to determine, and this court is not authorized to substitute its judgment for that of the commission where there is any substantial basis in the evidence upon which to make a finding of such necessity. It appears from the evidence in this case that the convenience and necessity of the public, as distinguished from the desire of a few individuals, will be served by the granting of the certificate. (*Public Utilities Com.* v. *Bethany Telephone Ass'n,* 270 Ill. 183.) The findings of the commission as to the need for the transportation along the route in ques-

tion and the ability of appellee to perform the service have substantial foundation in the evidence and should not be disturbed by this court on the ground that the order and the evidence are not sufficient.

Appellant contends that there is no evidence to show the rates to be charged or the schedules to be adopted, and that it was impossible to determine whether public convenience and necessity would be served by granting the certificate. In *Roy* v. *Commerce Com.* 322 Ill. 452, cited by appellant, it was held that the Commerce Commission erred in granting a certificate of convenience and necessity to operate a branch railroad without evidence of the financial ability of the applicant to perform the service. This court said: "The law contemplates an actual, thorough supervision, in the manner authorized by the Public Utilities act, of every corporation engaged in conducting a public utility in this State, to the end that continuous, adequate, uniform and satisfactory service shall be rendered to the public at reasonable rates and without discrimination by corporations of whose condition, financial and business standing and relations the Commerce Commission is constantly advised in the manner provided by law." The order in the present case provides that appellee shall file with the commission its schedule of rates, charges, rules and regulations, as required by the Commerce Commission act; that the provisions of the order be strictly complied with within twenty days from its date or that appellee discontinue operation thereunder, and that the commission retain jurisdiction for the purpose of issuing such orders as it may deem meet. Section 35 of the statute requires every public utility, before undertaking to perform any service, to file and publish the rates, and other charges and classifications, rules and regulations thereto, applicable to such service, in accordance with the provisions of the act. Section 41 empowers the commission to fix the rates and other charges, classifications, rules, regulations, contracts and practices of any pub-

lic utility after a hearing, if it finds them to be unjust, unreasonable, discriminatory or preferential. It was necessary for appellee to file its schedule of rates, charges, rules and regulations before commencing operations. The Commerce Commission has supervision over these questions at all times, therefore no harm was done by granting the certificate before these details were completed.

The proofs were closed and the case was taken under advisement by the commission on September 26, 1928. The order was entered on January 9, 1929. The record was certified to the circuit court, where the case was argued and taken under advisement on December 12, 1929. On December 28, 1929, before there was a decision by the circuit court, without notice to appellant appellee obtained leave of court and filed what it termed a supplemental abstract of record, which consisted of the written consent of the Department of Public Works and Buildings, bearing the signature of the director and the attestation of the chief highway engineer, granting permission to appellee to operate a motor bus route between Rockford and Mendota on State bond issue routes 70, 6 and 2. It was dated December 24, 1928, and certified by the secretary of the Commerce Commission on December 16, 1929, to the effect that the "same is a part of the record of proceedings in case No. 17748," which was the commission's docket number of the case at bar. The record of the commission certified on April 9, 1929, as being a true, correct and complete copy of the record, on which the circuit court heard argument, did not contain this document or any reference to it.

Sections 194 and 198 of chapter 121 (Cahill's Stat. 1929, pp. 2274, 2285,) provide that no public utility company shall be granted any right, privilege or franchise in, on or along the State bond issue hard roads therein referred to, (including routes 2, 6 and 70,) without the consent of the Department of Public Works and Buildings. Appellant in-

sists that the commission must make a finding that this consent has been given. We find no authority for this contention. The consent of the Department of Public Works and Buildings was, in fact, given before the commission entered its order but was by inadvertence omitted from the record.

Counsel contend that the purported approval by the Department of Public Works and Buildings improperly bore the certification of the Commerce Commission, which is an entirely separate and distinct body. This certification was proper because it was a part of the record certified to by the Commerce Commission. The approval by the Department of Public Works and Buildings needed no certification by that body.

It is objected that the consent was not issued until after proofs were closed before the commission. Appellant's rights were not prejudiced thereby. It was not entitled to notice of the hearing before the Department of Public Works and Buildings on appellee's application for consent. (*Egyptian Transportation System* v. *Louisville and Nashville Railroad Co. supra.*) The consent having lawfully been issued without appellant's knowledge, presence or approval, it could not have raised a valid objection before the Commerce Commission as to its admissibility.

Objection is made that the circuit court erred in admitting this consent after the hearing and without notice to appellant. Section 68 of the Commerce Commission act provides that the commission's record shall be filed with the clerk of the circuit court within twenty days after the filing with the clerk of a certified copy of the order appealed from. Appellee insists that the consent was omitted from the original record by inadvertence, and that appellee was entitled, upon discovering the omission, to have the consent incorporated into the record. In *Chicago Railways Co.* v. *Commerce Com.* 336 Ill. 51, cited by appellant, the Commerce Commission, without notice to the party opposing the

issuance of a certificate of convenience and necessity, attempted to amend a void order so as to validate it. It was held that the amendment was void for want of notice. In *Farmers' Elevator Co.* v. *Railway Co.* 266 Ill. 567, cited by appellant, by agreement two of the parties were to prepare and submit to the commission and to the railway company the draft of an order, to which the railway company might file objections, after which it might be necessary for the parties to get together. The order was drawn and copies submitted to the parties. The railway company filed objections, after which the commission, without further notice, entered its order. It was held that an order of this nature must be based upon evidence presented in the public hearing, with an opportunity to cross-examine the witnesses and present evidence in rebuttal, and not upon an *ex parte* examination. The two cases cited are distinguishable from the present case on their facts. In both cases the failure to give notice worked a prejudice against the party complaining. In the *Farmers' Elevator Co. case, supra,* it was held that the validity of an order entered by the commission, or by the court without notice, depends upon whether the complaining party's right of cross-examination or his right to offer evidence in rebuttal has been abridged. There was nothing that appellant could do before the commission or in the circuit court to prevent the admission of the consent issued by the Department of Public Works and Buildings, and no evidence introduced by it could have rebutted the issuance of the consent. The rights of appellant were not prejudiced by the filing of the consent.

Five passenger trains operate daily each way between Rockford and Rochelle, furnishing adequate service between these two points. It is the policy of this State that where a public utility is furnishing adequate service a certificate of convenience and necessity will not be granted to a competing line. (*Bartonville Bus Line* v. *Eagle Line,* 326 Ill. 200.) The order of the Commerce Commission was in

error in not excluding therefrom transportation to passengers traveling exclusively between Rockford and Rochelle.

The order of the circuit court will be reversed and the cause remanded to the circuit court, with directions to remand the cause to the Commerce Commission for further consideration in accordance with the views expressed in this opinion.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*