(No. 26775.—Reversed and remanded.)
CHICAGO & WEST TOWNS RAILWAYS, INC., *et al.*, Appellants, *vs.* THE ILLINOIS COMMERCE COMMISSION.— (BLUEBIRD COACH LINES, INC., Appellee.)

*Opinion filed March 16, 1943—Rehearing denied May 13, 1943.*

THOMPSON, J., dissenting.

BERTHOLD L. GOLDBERG, and CARROLL H. JONES, (IRWIN S. BASKES, of counsel,) for appellants.

E. S. D. BUTTERFIELD, and DAVID AXELROD, for appellees.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for the Commerce Commission.

Mr. JUSTICE GUNN delivered the opinion of the court:

The Illinois Commerce Commission on July 9, 1940, after a hearing, granted a certificate of public convenience

and necessity to Bluebird Coach Lines, Inc., to install and operate a motorbus-line extension between Berwyn, Cicero and Chicago, Illinois. On appeal to the circuit court of Cook county the order of the Commerce Commission was affirmed. The application of the Bluebird Coach Lines, Inc., for such certificate of public convenience and necessity was opposed by A. A. Sprague, as trustee for Chicago Rapid Transit Co., and by Chicago & West Towns Railways, Inc. For convenience Bluebird Coach Lines, Inc., will be hereafter referred to as Bluebird, A. A. Sprague, trustee for Chicago Rapid Transit Co. as Rapid Transit Co., and Chicago & West Towns Railways, Inc., as West Towns. The order entered by the commission restricted Bluebird from doing any local business within the city of Berwyn, or within the town of Cicero or between them, or within the city of Chicago. The Rapid Transit Co. and West Towns appeal from the order of the circuit court of Cook county.

Prior to July, 1936, Bluebird was operating as a motor carrier for transportation of passengers between the city of Joliet and Chicago over U.S. route 66, which extended from Berwyn and Cicero on Ogden avenue. It made an application with the Commerce Commission setting forth that public convenience and necessity required an extension of its existing route through Berwyn and Cicero in order that some of its busses might pass through the business sections of those cities. This proposed extension diverged from the existing route on U.S. 66, at its intersection with Harlem avenue at Ogden avenue in Berwyn and extended north on Harlem avenue to Riverside drive, thence northeasterly to Cermak road, thence east on Cermak road through Berwyn and Cicero to the junction with the existing route at Cicero avenue, and then along the existing route to the central business district of Chicago.

The appellants and other companies not appealing were named as respondents. At the time the application was

filed Bluebird was restricted under an order entered by the Commerce Commission from doing any local business east of the Desplaines river, and, as Berwyn and Cicero both lie wholly east of the river, Bluebird was restricted from doing local business in either of said towns or in the city of Chicago. Cicero adjoins Chicago immediately on the west and Berwyn joins Cicero to the west. Cicero has a population of about 66,000 and Berwyn about 47,000. Ogden avenue, which is followed by Bluebird's route from Joliet, extends diagonally from southwest to northeast through Berwyn and Cicero, and thence into Chicago. During the course of the hearing Bluebird sought and obtained leave to amend its application so as to turn north at Oak Park avenue in Berwyn to reach Riverside drive instead of going north on Harlem avenue.

The Rapid Transit operates a system of elevated railways throughout Chicago and its suburbs. All of its lines lead to the central business district of Chicago, where they enter an elevated loop circling the business district. Its lines extend into the western suburbs of Chicago, and one of them runs through Cicero and Berwyn all of the way to Oak Park avenue, which lies in the westerly part of Berwyn. It has a double-track road and runs parallel to and within two hundred feet of Cermak road, so that the proposed change in the route of Bluebird will parallel Rapid Transit from Oak Park avenue at the place where Rapid Transit intersects Ogden avenue some distance east of Cicero. Rapid Transit operates through Cicero and Berwyn at surface grade and connects in said towns with eleven stations at intersecting streets a quarter of a mile apart. Twenty-four-hour service is maintained and trains are operated during heavy travel at four-minute intervals, and during midnight hours at thirty-minute intervals.

West Towns operates a system of bus lines and streetcars in the suburbs west of Chicago including Cicero and Berwyn. In these two municipalities it has east and west

lines on Roosevelt road, Sixteenth street, Cermak road and Ogden avenue, with other lines extending through Berwyn and into Cicero. It also has north and south lines through Berwyn and through Cicero. The change in route proposed by Bluebird will parallel West Towns' route along Cermak road and Oak Park avenue in Berwyn to the east limits of Cicero. The different branches of West Towns have numerous connections with stations on Rapid Transit, and also the Burlington Railroad and the Chicago Surface Lines, which all run downtown into the Chicago "Loop" district. West Towns also has a bus line on Oak Park avenue, which will be paralleled by Bluebird from the place it diverges on Ogden avenue north to Riverside drive. Transfer privileges are maintained between Rapid Transit, West Towns and the Chicago, Burlington & Quincy railroad.

Appellants opposed the application of Bluebird on the grounds that adequate transportation between Berwyn and Cicero on the one hand and between such towns and Chicago on the other was already being furnished over existing lines; that the proposed service of Bluebird would be in direct competition with existing services, and that public convenience and necessity did not require the proposed service, but if the commission should find that public convenience and necessity *did* require such service, a certificate therefor should be granted to the carriers now furnishing the existing transportation. There were other objections made to the granting of the certificate not necessary to consider at this time.

Many hearings were had and the Commerce Commission from time to time entered three orders, the first two of which were vacated and rehearings granted. In its first order the commission authorized Bluebird to operate over the extension of its routes on its trips between Joliet and Chicago, and the order provided that headways should provide for hourly service over the route as extended, commencing at Joliet. A rehearing was granted on this order.

The second order authorized Bluebird to extend its operations in conjunction with or in addition to, or as an integral part of, its present operations on its trips between Joliet and Chicago over the extension of route beginning at any point west of Oak Park avenue and Ogden avenue. A rehearing was granted on this order. Its final order was entered July 9, 1940, granting a certificate to Bluebird to operate over a route commencing at the intersection of Oak Park and Ogden avenues in Berwyn, following the extension described above to a junction with the existing route, and also removed the restrictions relating to local operations east of the Desplaines river, and thereby permitted direct carriage of passengers by Bluebird between the city of Berwyn and the town of Cicero and Chicago.

In addition to the objections made that the transportation between Berwyn and Cicero on the one hand and Chicago on the other was already adequate and would be in direct competition with West Towns and Rapid Transit, West Towns, in the course of the proceeding, offered to install and operate a motorcoach service similar to that proposed by Bluebird between Berwyn and Cicero and downtown Chicago over the route proposed by Bluebird, if the commission should find public convenience and necessity required such an operation by the carrier.

Numerous findings were made by the commission, among which was that the busses of West Towns are of late type, of recent date, in good repair and operate on schedule, and that the drivers are courteous and effort is made to satisfy the comfort and ease of its patrons to the extent of its operations and ability, and that under its operating conditions the company is well managed. There are also findings that the proposed service of Bluebird was service of an express nature from the two cities in question to the central district of Chicago, without rendering local service in the towns or between the towns; that the service proposed is distinct from that rendered by West Towns and Rapid Transit in that the latter is intended to

accommodate the transfer of heavy loads between points along their lines, and operate a large number of vehicles with many stops, and that their cars are designed to provide as many seats as possible with sufficient room at the same time for standing loads during rush hours; that, on the other hand, the proposed service of Bluebird is not intended for mass transportation; is a more luxurious type; that space within the operating units is sacrificed to provide comfortable seats for passengers; that its headways are not as frequent as those of appellants, its scheduled stops much fewer, and its rates of fare higher, being designed to attract those who are willing to pay higher rates for additional comfort and safety. It is then found the conditions in the metropolitan area of Chicago have changed since it was restricted from doing business east of the Desplaines river, and with the increase of population in the western surburbs, the advent of all types and classes of transportation services is made desirable. It is also found West Towns pioneered in the business of local transportation in the western surburbs of the city of Chicago, and materially helped the growth and welfare of many of the communities, and that its system is now operated at a flat rate of ten cents within a zone east of La Grange, Illinois, with extensive transfer privileges.

It will be observed the commission does not find appellants are not adequately rendering the service to the communities involved, nor is there any finding that West Towns would be unable, if the commission should so order, to render the same service in the same manner as that proposed by Bluebird. This brings forward the opposing theories with respect to the rights of the Commerce Commission to issue a certificate of convenience and necessity as between competing carriers, one of which is already in the field.

Appellants take the position that before the commission is authorized to issue a certificate of convenience and necessity to a competing carrier it must first permit or direct

the existing carrier to furnish the service required by the commission. But, on the other hand, the appellee contends in the instant case that neither of the appellants nor any other utility has offered to supply this service or made showing in the form required by law that they are in fact ready, able and willing to do so, and, without directly asserting that it is the law, claim, in effect, that the day of monopoly for public utilities is a thing of the past, especially in view of the provisions of section 55 of the Public Utilities Act, which specifically provides no certificate shall be construed as granting a monopoly.

The public policy underlying the granting of certificates of convenience and necessity to a newcomer in the field of transportation as against the rights of one already in the field and rendering service was fully considered in *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580, and it was there said: "To authorize an order of the Commerce Commission granting a certificate of convenience and necessity to one carrier though another is in the field it is necessary that it appear first that the existing utility is not rendering adequate service. (*West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87.) The method of regulation of public utilities now in force in Illinois is based on the theory of a regulated monopoly rather than competition, and before one utility is permitted to take the business of another already in the field it is but a matter of fairness and justice that it be shown that the new utility is in a position to render better service to the public than the one already in the field. * * * The power of the State to regulate a utility carries with it the power to protect such utility against indiscriminate competition, and such power should be exercised to that end."

In *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87, we held that to authorize the Commerce Commission to grant a competing

carrier a certificate of convenience and necessity and authorize it to operate its line to serve the public already served by an existing utility, it was required that it be shown the existing utility was not rendering adequate and convenient service and the operations of the applicant would eliminate such inadequacy and inconvenience.

In *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200, we again said: "It is the policy in this State, established by legislation for the regulation of all public utilities, to provide the public with efficient service at a reasonable rate by compelling an established public utility occupying a given field to provide adequate service and at the same time protect it from ruinous competition, (*Illinois Power and Light Corp.* v. *Commerce Com.* 320 Ill. 427,) and where additional or extended service is required in the interest of the public and a utility in the field makes known its willingness and ability to furnish the required service the Commerce Commission is not justified in granting a certificate of convenience and necessity to a competing utility until the utility in the field has had an opportunity to demonstrate its ability to give the required service. *Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580."

It is also held in *Illinois Power and Light Corp.* v. *Commerce Com.* 320 Ill. 427, where the contest was between competing carriers, one of whom was already in the field, that "The Public Utilities Act provides the means for compelling appellant to provide adequate service for the public in the territory which it serves. If the company now occupying the territory is incapable of providing adequate service, then, and not until then, will a situation arise when the public convenience and necessity may require the establishment of another utility."

We know of no reason why the principles announced in the foregoing decisions should be departed from. In the present case, in the answer to the Bluebird petition,

appellants questioned the authority of the Commerce Commission to grant the certificate of convenience and necessity to Bluebird, and in the course of the hearing West Towns made a specific offer to render the same service proposed to be rendered by appellee in case it should be found that public convenience and necessity required it. There are no findings made by the Commerce Commission that indicate the inability of appellants to render all of the service necessary for people of the territory which they serve, nor are there any findings that West Towns is not capable of rendering the specific service proposed to be rendered by Bluebird. The basis of the order of the commission seems to be that for a limited number of customers who might be willing to pay a higher rate of fare and obtain a slightly improved service, this would be justification for putting competition in the field without regard to the ability or willingness of the established carrier to render the same service in case it should be ordered so to do.

In our opinion the foregoing cases conclusively establish the right of appellants to have an opportunity as a regulated monopoly to render whatever service convenience and necessity may require, and it is only when it has been demonstrated that it is unable either from financial or other reasons to properly serve the public that a competing carrier will be allowed to invade the field. As the record stands the question was raised by the answer of appellants, and also by the offer of West Towns, but no evidence was taken by the commission which would justify it in granting a certificate of convenience and necessity to a competing carrier, until it has been established the utility in the field was unable to render the service. The commission should have made findings upon this proposition.

Section 68 of the Public Utilities Act (Ill. Rev. Stat. 1939, chap. 111⅔, par. 72,) provides that on appeal to the circuit or superior court no new or additional evidence may be introduced. But the same section also provides:

"If it appears the Commission failed to receive evidence properly proffered on a hearing or a rehearing, or an application therefor, the court shall remand the case to the Commission with instructions to receive the testimony so proffered and rejected, and to enter a new order based upon the evidence theretofore taken, and such new evidence as it is directed to receive, unless it shall appear that such new evidence would not be controlling, in which case the court shall so find in its order."

The petition for rehearing set up that the evidence failed to show there was not at the present time sufficient and adequate transportation facilities between Berwyn and Cicero and Chicago, and no finding that the existing transportation facilities between said communities are inadequate or insufficient; and also further, that while the order shows appellants had for many years provided the local transportation between said cities and Chicago, and pioneered the field and spent large sums of money in developing and furnishing the service, nevertheless the Commerce Commission permitted appellee to install a new and competitive service without directing appellants, or either of them, to install such service as might be required by public convenience and necessity.

Many other suggestions are made in the petition for rehearing which adequately called the attention of the Commerce Commission to appellants' contentions, which required the commission to take evidence and make findings which would justify its order in granting the certificate of convenience and necessity to appellee. Upon the showing made in the record, the Commerce Commission was without authority to issue the certificate of convenience and necessity to the Bluebird line. Before it may do so it must be established that appellants, as pioneers in the field, are unable to adequately perform the service which may be found necessary or convenient by the Commerce Commission.

There are several other important questions raised and argued by the parties, which are not now necessary to determine, and which are not determined because, if upon the taking of additional testimony it should be found the appellants can adequately perform the service rendered by appellee, they become immaterial. And if, on the other hand, it is found and determined the additional service is required by public convenience and necessity, and appellants are unable to render such service, the decision of these additional points may be unnecessary.

For the reasons indicated, the judgment is reversed and the cause remanded to the circuit court of Cook county with directions to remand the cause to the Commerce Commission, with instructions to take such additional testimony and make such additional findings as may be necessary and proper to determine the issues raised by appellants, in conformity with the views expressed herein.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting:

Entertaining views at variance with those expressed in the majority opinion, I am compelled to dissent, and in setting forth my reasons for dissenting, I do so with the viewpoint of clarifying, if possible, the decisions of this court on the policy of the Public Utilities Act, as expressed by the legislature and previously interpreted by this court.

On many occasions this court has avowed the general principle that the primary consideration in cases of this kind is the convenience and necessity of the public. (*West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87; *Chicago Railways Co.* v. *Commerce Com.* 336 Ill. 51; *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200; *Roy* v. *Commerce Com.* 322 Ill. 452.) While priority in the field is an element to be considered, it will not of itself govern the granting

of certificates of convenience and necessity. *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200.

The majority opinion proceeds upon the principle that the primary consideration in this case is the protection to be afforded an existing utility, on the theory that the method of regulation provided by our Public Utilities Act is that of regulated monopolies rather than competition. In support of that all-embracing statement, the case of *Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580, is relied on, where the language used, in my opinion, does not contain the necessary restrictions to render it agreeable to other pronouncements of this court on the subject and in harmony with the last clause of section 55 of the Public Utilities Act, (Smith-Hurd's Ann. Stat. chap. 111⅔, sec. 56,) and section 14, article II, of the constitution, prohibiting any grant of a special privilege or immunity. The last clause of section 55 of the Public Utilities Act provides: "No certificate of public convenience and necessity shall be construed as granting a monopoly or an exclusive privilege, immunity or franchise." The clearness with which the legislative intent is manifested prohibits any latitude of construction that would delete or contradict such expression. To proceed in this case upon the theory that appellant has a monopolistic right, in all instances, to prevent any service that might indirectly affect its income is placing it on too broad a plane and in a position not strongly entrenched in the decisions rendered in previous cases. The true rule, it seems to me, to be gathered from all the decisions, and that most soundly fortified in principle, is that the method of regulation in this State is through the exercise of the police power through an agency of the State, by which a license or privilege is granted by such agency to carry on a utility business. (*Railway Express Agency* v. *Commerce Com.* 374 Ill. 151.) As was said by the court in *Northwestern*

*Telegraph Exchange Co.* v. *Twin City Telegraph Co.* 89 Minn. 495, 95 N. W. 460, "As between two corporations exercising similar franchises upon the same street, priority, though it does not create monopoly, carries superiority of rights." Under our Public Utilities Act it must be conceded that an existing utility, serving a particular field of service, in justice and fairness should be given preference over a newcomer in the field, in view of the time and money spent in developing its business and in rendering adequate service to the public. Such are the holdings in this State without dissent. *Chicago Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320; *West Suburban Transportation Co.* v. *Chicago and West Towns Ry. Co.* 309 Ill. 87; *Choate* v. *Commerce Com.* 309 Ill. 248; *Egyptian Transportation System* v. *Louisville and Nashville R. R. Co.* 321 Ill. 580; *Chicago Railways Co.* v. *Commerce Com.* 336 Ill. 51; *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200; *Illinois Power and Light Corp.* v. *Commerce Com.* 320 Ill. 427; *Chicago, Burlington and Quincy Railroad Co.* v. *Commerce Com.* 345 Ill. 576.

In only one of those cases is the broad statement made that the method of regulation provided by our Public Utilities Act is on the theory of regulated monopoly rather than competition. The primary purpose of the law being to subserve public convenience and necessity this court has approved, as the policy of our law, the prevention of *unrestricted* or *ruinous* competition and to that extent has given protection to existing utilities, on the theory that it is in accord with sound business economy that the utility already in the field be given an opportunity to furnish the required service, where it offers and is able to do so. *Chicago Rys. Co.* v. *Commerce Com.* 336 Ill. 51; *Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580, and many other cases.

The only case which seems to support the rule of regulated monopoly is *Egyptian Transportation System* v. *Louis-*

*ville and Nashville R. R. Co.* 321 Ill. 580. However, in that case the court held that "the Commerce Commission, under the Public Utilities Act, has power to require additional service, and in the absence of a showing that the public interest would be better served by granting a certificate to an entirely new and competing utility, such certificate should not be granted until it be determined whether the utility already in the field can meet the requirement of public convenience and necessity." The language is clear and explicit that only in the absence of a showing that the public interest would be better served by new and competing utilities should such certificate be refused until it be determined whether the utility in the field can meet the requirements of public convenience and necessity.

It is true that at the time of the application of any new and competing utility the utility in the field has a right to offer evidence not only that the public interest would not be better served by granting a new and competing utility a certificate of convenience and necessity, but also, if such service is found necessary, that it is able and willing to furnish such service. After this is offered it is for the commission in its discretion and judgment to weigh the evidence and pass upon the question as to whether or not a new competing utility can better serve the public interest.

If they make a finding as to this, the question whether the utility in the field can as well or better furnish the service is embraced in this finding, and of course the necessity of any further special finding is obviated.

The rule laid down in *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200, supports this proposition, which, in my opinion, should be considered the correct rule to be applied by the commission in all cases of this kind. In that case it is said : "While priority in the field is an element to be considered, it will not of itself, govern the granting of the certificate. The proper consideration in a matter of this kind, is which applicant under the facts and circum-

stances shown by the evidence will best serve the public interest." In that and other cases this court has said that by the legislation in this State, it is the policy to provide the public with efficient service by compelling an existing utility to provide adequate service and at the same time protect it from ruinous competition. Its protection is not because it is a monopoly but because its protection against ruinous competition is a protection of the public against ultimate inefficient, inadequate service. All authorities agree that, whether the purpose of the Public Utilities Act be to provide for a regulated monopoly or for regulated competition, the question of primary importance is the public convenience and necessity, and whether the order of the commission is unreasonable must depend in each case upon the evidence produced as to such ultimate primary fact.

All the cases revolve around the rule of prevention of ruinous unrestricted competition and merely place the burden upon a new competing utility to show, as against an existing utility already occupying the field, that the existing utility is not rendering adequate and convenient service and that the operation of the new competing line would eliminate such inadequacy and inconvenience, (*West Suburban Transportation Co.* v. *Chicago and West Towns Ry. Co.* 309 Ill. 87,) or that the new utility is in a position to render better service to the public than the one already in the field. The decisions of this court hold that since the Commerce Commission is an administrative agency charged with providing such regulatory orders as may be necessary to carry out the legislative intent, (*Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555,) where a new utility seeks to enter a competitive field, the commission should consider evidence not merely of the fact that an existing utility is already in the field rendering service, but of other pertinent facts showing the need and convenience for the additional service and whether such service would be better than that furnished by the existing utility

and whether or not the existing utility, by reason of its priority in the field is able to and can furnish such additional service. This evidence of ability to furnish should of course be offered at the time of the hearing on the application of the utility seeking to enter the competitive field. This presents all necessary questions to the commission for determination and its ruling is subject to review in accordance with certain principles of law laid down by this court.

This court has held that, in reviewing an order of the Commerce Commission, the court is limited to a determination as to whether the commission acted within the scope of its authority; whether the order has substantial foundation in the evidence; and whether any substantial or constitutional right has been infringed. (*Chicago, Burlington and Quincy R. R. Co.* v. *Commerce Com.* 345 Ill. 576; *Palmyra Co.* v. *Modesto Co.* 336 Ill. 158; *City of Chicago* v. *Commerce Com.* 356 Ill. 501.) Further, it is not the province of the court to weigh the evidence and substitute the judgment of the reviewing court for that of the commission. (*Campbell* v. *Commerce Com.* 334 Ill. 293.) Orders of the commission should be set aside only if arbitrary, unreasonable, or in clear violation of some rule of law. (*Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 Ill. 412; *Commerce Com.* v. *Chicago and Eastern Illinois Railway Co.* 332 Ill. 243.) In ascertaining if the findings furnish a reasonable basis for the order, the facts found may be re-examined in connection with the evidence, but the court is not supposed to enter upon an independent investigation of the evidence to develop new facts not found by the commission. *Chicago, Burlington and Quincy R. R. Co.* v. *Commerce Com.* 345 Ill. 576; *Commerce Com.* v. *Chicago and Eastern Illinois Ry. Co.* 332 Ill. 243.

The law never intended the court to put itself in the place of the commission to try the matter anew as a legislative body substituting its findings for those of the com-

mission. Clearly it was not intended by this law that the court should interfere with the orders and findings of the commission or review them further than is necessary to keep them within the law and protect the constitutional rights of the corporation over which it was given control.

It is my judgment the opinion is wrong in remanding the cause to the Commerce Commission with instructions to take such additional testimony and make such additional findings as may be necessary and proper to determine the issues raised by the appellants, which, of course, is the question as to whether or not any existing utility in the field is able to adequately perform the service found necessary in the public interest. If the respondents desired to offer testimony as to their ability to adequately perform the service found necessary, ample opportunity was extended them on several occasions during the various hearings before the commission.

It is asserted in the majority opinion that there are no findings to indicate the inability of appellants to render all of the service necessary for the people of the territory to be served, or that the West Towns is not capable of rendering the specific service. That, I believe, is not supported by the record.

The commission found that the physical facilities and the service of Chicago & West Towns Railways, Inc., and Chicago Rapid Transit Company are from their very nature not designed and are not adequate to render the type of service proposed to be rendered by Bluebird Coach Lines, Inc.; that the service proposed by the Bluebird is distinct in character from that rendered by Chicago & West Towns Railways, Inc., and Chicago Rapid Transit Company; that Chicago & West Towns Railways, Inc., and Chicago Rapid Transit Company offer to and do operate in the mass transportation of passengers, their facilities, equipment and operating practice being intended to accommodate, as con-

veniently as may be possible, the transfer of heavy loads between points along their routes; that they operate large numbers of vehicles on frequent headways with many scheduled stops and that their operating units are appropriately designed to provide as many seats as possible within the limited space of the unit, but with sufficient room, at the same time, for the standing loads encountered during rush hours; that the service of Chicago, Burlington & Quincy Railroad Co. is not adequate to serve the public convenience and necessity required; that numerous inconveniences are suffered by the traveling public of Berwyn and Cicero in using the combined facilities of Chicago & West Towns Railways, Inc., Rapid Transit, Chicago, Burlington & Quincy Railroad Co., Chicago Motor Coach Co., and surface lines in reaching the central business district of the city of Chicago and the northern part of said central business district, which said inconveniences are alleviated by the operation of the Bluebird; that Bluebird's operation constitutes a service of an express nature which reduces the running time from Cicero and Berwyn to the northern section of the central business district of Chicago and *vice versa;* that Bluebird's operation provides a fast, convenient and efficient service entirely different and distinct in character from the kind presently rendered by other existing utilities or any combination thereof, thus better serving and promoting the public convenience and necessity of public transportation for Berwyn and Cicero; and that public convenience and necessity require that a certificate should be granted to Bluebird.

There are also findings that both the West Towns and Rapid Transit Lines are in Federal bankruptcy reorganization proceedings and are operating at a loss; that the use of the combined facilities of the West Towns and Rapid Transit Lines requires passengers to obtain transfers and to take a much longer time to reach the loop district

than by the Bluebird service; that the transfer requires a long wait at the transfer points and requires the payment of two fares.

There is a specific finding that the public convenience and necessity required the proposed service. That is a sufficient finding that the present joint service of the West Towns and the Rapid Transit Lines is not adequate. By its findings the commission expressed its conclusion that the Bluebird could best serve the public convenience and necessity. The findings were supported by the evidence. It is too plain for argument that any order entered by the commission against the West Towns and Rapid Transit lines for adequate or additional services would be subject to the orders of the Federal court. The offers to render the service found necessary and convenient by the commission were made by the manager and the attorneys and there appears no showing that the trustees appointed in the reorganization proceedings would or could obtain Federal court sanction for engaging in such service of a new and distinct type. No genuine nor *bona fide* offer can be said to have been made, and the record in this case fails to show that the trustees of appellants made known their willingness and ability to furnish the proposed service. Had they presented orders of the Federal court authorizing and approving such offers and orders authorizing the expenditure of funds *in custodia legis* for the purchase of the required equipment, the offer might have been considered genuine and made in good faith. But an existing utility, to justify the commission in granting it protection against competition, must make known its ability and willingness in some manner by competent evidence showing an authority to comply with such order of the commission as it may enter in that behalf. For the reason that the record fails to show any *bona fide* or genuine offer supported by evidence of its ability to render the proposed services, it is

my opinion the appellants are not entitled to have a further hearing in the matter.

Further, it is not necessary to remand the cause to the Commerce Commission as to any special findings as to whether or not the utility in the field can or will adequately perform the service. No testimony in this respect offered was rejected, which, if it had been, would present a different situation and one similar to that in the case of *Egyptian Transportation System* v. *Louisville and Nashville R. R. Co.* 321 Ill. 580, and to permit the cause to go back under such circumstances is to permit the existing utility to again try the case in an attempt to overcome the findings of the commission that the public interest would be better served by a certificate being issued to the new and competing utility.

Summing up at this point, it is my opinion that when a petition is presented to the commission for a certificate of convenience and necessity in territory being served by an existing utility, the burden is on the petitioner to show in the first instance, that public convenience and necessity warrants the proposed service and that such proposed service can be better performed by petitioner than by the utility already in the field with its present service rendered in connection with such additional or extended services as the commission may find from the evidence that public convenience and necessity requires. If the commission finds, from the evidence, that petitioner can better furnish the service required it should issue a certificate unless the commission finds from the evidence that the granting of such certificate would result in ruinous competition to the existing utility. The utility already in the field may exercise its prior right to render such adequate service as the commission may find necessary and convenient, but its claim to such priority must be based upon evidence duly offered at the hearing and not upon a mere offer, without proof

of ability, to render the service. Applying such rules, the decision made by the Commerce Commission was within the scope of its authority, was not without foundation in the evidence, and no constitutional right has been infringed. The findings of the commission are conclusive on the court unless manifestly against the weight of the evidence. (*Public Utilities Com.* v. *Smith,* 298 Ill. 151.) We must accord to its decisions the strength due to a tribunal appointed by law and informed by experience. Having examined the record and being guided by these rules, I find no error in the order of the Commerce Commission nor in the judgment of the circuit court affirming it. The judgment of the circuit court approving the order should have been affirmed.