(No. 31172.—

ILLINOIS HIGHWAY TRANSPORTATION COMPANY *et al.*, Appellants, *vs.* THE COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed January 18, 1950.*

C. H. JENKINS, and HAROLD M. OLSEN, both of Springfield, for appellant Illinois Highway Transportation Company; GRAHAM & GRAHAM, of Springfield, (J. A. GORMAN, of St. Louis, Mo., of counsel,) for appellant Illinois Terminal Railroad Company.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM R. MING, JR., and MILTON MALLIN, both of Chicago, of counsel,) for appellee Illinois Commerce Commission; DUNN & DUNN, of Bloomington, and RENO & WRIGHT, of Champaign, for appellee Illini Coach Company.

Per CURIAM: This is an appeal from a judgment of the circuit court of Logan County confirming three orders of the Commerce Commission involving the separate applications of three motor carriers for certificates of convenience and necessity to operate between Peoria and Lincoln *via* Morton. The several applications were made by Illinois Highway Transportation Company, hereafter called Highway, Illini Coach Company, Inc., hereafter called Illini, and the Black Hawk Motor Transit Company. Subsequently, Illinois Greyhound Lines, Inc., hereafter referred to as Greyhound, was substituted for the Black Hawk Motor Transit Company. The Illinois Terminal Railroad Company, hereafter called Terminal, entered its appearance and participated in each case. Although the cases were consolidated for hearing, the commission entered separate orders (1) granting a certificate to Illini and denying the applications of (2) Highway and (3) Greyhound. Appeals from each order of the commission were eventually consolidated

in a single cause in the circuit court of Logan County. The present appeal was perfected by Highway under section 69 of the Public Utilities Act. (Ill. Rev. Stat. 1949, chap. 111⅔, par. 73.) Highway appeals from the part of the judgment confirming the orders denying its application and granting the application of Illini. Terminal has joined in the appeal but only with respect to the confirmation of the commission's order granting a certificate to Illini. No appeal has been prosecuted by Greyhound, and the denial of its application need not be further considered.

The present proceeding originated in the filing by Highway with the commission, on October 18, 1946, of an application for a certificate to operate between East Peoria and the junction of State highways No. 121 and No. 122, commonly known as Delavan Junction, *via* Morton, as an alternate route to its existing route between East Peoria and Delavan Junction, *via* Pekin and Delavan. Five days later, Illini made application to extend its Peoria to Morton service from Morton to Lincoln. Greyhound, by its application filed on November 6, 1946, sought an alternate route between Peoria and Springfield *via* Lincoln, but did not propose to offer any local service between Morton and Lincoln.

Two routes are available to motor carriers between Peoria and Lincoln. The shorter and more direct route is from Peoria ten miles southeast to Morton on U. S. highway No. 150, and then south thirty-two miles on State highway No. 121 to Lincoln, a total distance of forty-two miles. Delavan Junction, an uninhabited intersection, lies midway between Morton and Lincoln. By their applications, both Highway and Illini sought to utilize this route between Peoria and Lincoln. The only other practical route is from Peoria southwest on State highway No. 29 ten miles to Pekin, continuing on highway No. 29 fifteen miles south to the junction with route No. 122, thence directly east on highway No. 122 ten miles, through Delavan, to

Delavan Junction, and then south on highway No. 121 to Lincoln, a total distance of fifty-one miles. In short, both routes leave Peoria together and diverge in East Peoria. One proceeds southeast from East Peoria to Morton; the other, southwest to Pekin. Both then run south for a distance of sixteen miles, parallel with each other and about ten miles apart, to their respective intersections with highway No. 122. The longer route then runs directly east on highway No. 122, joins the other at Delavan Junction and both follow highway No. 121 into Lincoln.

Peoria and Lincoln are also connected by railroad. Peoria is the northern terminus of the main passenger line of Terminal. This railroad company offers passenger service from Peoria and East Peoria through Morton to Lincoln and on southwest to Springfield and St. Louis, Missouri. Between Morton and Peoria, Terminal's main line runs parallel with and approximately five miles east of highway No. 121.

With respect to transportation between Peoria and Lincoln, Terminal was the original carrier in the field. It commenced serving this area in 1906. At the present time, Terminal offers forty passenger stops between Morton and Lincoln and operates six trains daily each way between Peoria and Lincoln, with an average scheduled time of one hour and five minutes. Terminal also operates a branch line from Mackinaw Junction, a few miles southeast of Morton, to Decatur, thus providing direct service from Peoria to Decatur. At the hearing before the commission, Terminal introduced evidence that its tracks, right of way, and the bodies and trucks of its passenger equipment are in very good condition; that it has instituted a program of renovating the interiors of its old passenger cars and has three new trains on order; that its trains operate substantially on schedule and are rarely crowded, and that, commencing in 1946, passenger traffic and revenue had showed a steady decline.

Highway's principal station and offices are in East Peoria. In 1941, it obtained a certificate of public convenience and necessity to operate as a motor carrier from Peoria to Lincoln to Decatur. Highway maintains a daily schedule of three buses each way between Peoria and Decatur and has an operating time of one hour and forty minutes between Peoria and Lincoln. By restrictions contained in its existing certificate, Highway cannot carry persons whose point of origin is Peoria and whose destination is either Lincoln or Decatur, nor any person whose point of origin is either Decatur or Lincoln and whose destination is Peoria. These restrictions were imposed to prevent Highway from competing with Terminal's operations between Peoria and Lincoln and between Peoria and Decatur *via* Mackinaw Junction. Between East Peoria and Lincoln, Highway operates over State route No. 29, through Pekin, to the junction with highway No. 122, then on highway No. 122, through Delavan, to the junction with highway No. 121, otherwise known as Delavan Junction, and on highway No. 121 to Lincoln. Although, except for restrictions noted, Highway furnishes local service between all intermediate points, its revenue from this source is small and wholly insufficient to sustain the service. Its principal sources of income are from its more frequent local service between Peoria and Pekin and from through traffic originating or destined for points beyond Peoria, or originating or destined for points beyond Decatur. Highway meets connecting carriers at both Peoria and Decatur.

The application of Highway for authority to use the shorter alternate route from East Peoria to Morton to Delavan Junction was made for the purpose of adding a single additional and faster bus daily each way between Peoria and Decatur. By using the alternate route, Highway expected to reduce its running time from Peoria to Decatur by thirty-five minutes. Highway was particularly interested in inaugurating an additional bus from Peoria

to Decatur, which, by operating over the shorter route through Morton, could depart from Peoria at 6:40 A.M., instead of the less attractive time of 6:05 A.M., and still make connections with interline carriers at Decatur. In order not to compete with Terminal between Peoria and Lincoln, and Peoria and Decatur, Highway agreed to accept the same restrictions on traffic between Peoria, Lincoln and Decatur as imposed by the terms of its existing certificate. In order not to compete with either Terminal or Illini between Peoria and Morton, Highway specified that it did not intend to offer transportation between Peoria and Morton or intermediate points. In addition, Highway agreed not to accept passengers at Morton for Lincoln. Although originally proposing to offer local service between Morton and Delavan Junction, by reason of objections raised by Terminal and its own dim view of potential traffic in the area, Highway stipulated that it would consent not to accept any passengers from Morton to Delavan Junction. As a consequence of the several restrictions consented to by Highway, Terminal withdrew its objections to Highway's application for an alternate route between East Peoria and Delavan Junction *via* Morton.

Illini's operations in the Peoria area, prior to its application of October 23, 1946, were confined to two east-west routes, one from Peoria *via* Morton to Bloomington; the other from Pekin to Bloomington. In addition, Illini rendered unrestricted service between Peoria and Morton. By its application, Illini sought to extend its Peoria to Morton operations by obtaining a certificate to operate from Morton south on highway No. 121 to Lincoln. Illini filed a proposed schedule calling for three buses daily each way between Peoria and Lincoln and allowing for a uniform time of one hour and twenty-five minutes for the trip.

In recognition of Highway's existing service along State route No. 121 for sixteen miles between Delavan Junction and Lincoln, Illini agreed, in advance, to a restriction pro-

hibiting it from transporting persons between Lincoln and Delavan Junction, or any intermediate point, or between intermediate points. Illini would not consent to any other restrictions. The refusal of Illini to agree to additional restrictions was particularly objectionable to Terminal because Illini's proposed service would bring it into direct competition with Terminal's railroad service from the cities of Peoria, East Peoria, and Morton to Lincoln. Furthermore, two of Illini's three scheduled trips each way would leave Peoria and Lincoln at approximately the same time as Terminal's trains. Highway also objected to through service for Illini between Peoria and Lincoln.

Illini, by its application, also expressed an intent to furnish local service between Morton and Delavan Junction and to make a stop at the town of Hopedale located two miles east of highway No. 121 and thirteen miles south of Morton. There are no towns on highway No. 121 between Morton and Delavan Junction. The region is, however, an area of prosperous farms. In the sixteen miles between the city limits of Morton and Delavan Junction there are forty-six houses facing the highway and a number of other houses some distance from the highway. In addition to Hopedale, a town with a population of 550 persons, the only other community near highway No. 121 is Tremont, a small town of undisclosed population, located one mile west of highway No. 121 and six miles south of Morton. Illini did not propose to stop at Tremont en route to Lincoln, as Tremont was already served by Illini's buses operating between Pekin and Bloomington.

Because Terminal viewed Illini's proposed local service between Morton and Delavan Junction along highway No. 121 as an encroachment upon the service it offers on its main passenger line lying five miles to the east of highway No. 121, Illini produced twenty-eight witnesses, consisting largely of merchants and manufacturers in Morton and Lincoln and residents of Hopedale, who testified as to

the need for direct public transportation for persons living along the highway and in Hopedale. Witnesses from Morton and Lincoln testified that industries in their respective cities gave employment to large numbers of persons some of whom came from Hopedale and the farming area between Morton and Delavan Junction, and that residents of this area visited Peoria, Morton and Lincoln for shopping, recreation and other purposes. Residents of Hopedale testified to the effect that practically all of the 200 employable persons residing there work in Peoria, East Peoria, Morton or Lincoln; that Hopedale is without any means of public transportation, including taxicabs; that they must go to Peoria or Lincoln for medical, dental and hospital services, recreational facilities and much of their shopping; that it is inconvenient to use Terminal's transportation facilities, the nearest stop on the Terminal line being two miles east of town; that people would use bus transportation, if available, and that there is a definite need for direct transportation service to Morton and Peoria.

Based upon the foregoing evidence, the commission made numerous findings of fact with reference to each application and entered orders denying the application of Highway and authorizing the issuance of a certificate to Illini, with no other restriction than a prohibition against rendering local service between Lincoln and Delavan Junction and intermediate points. The circuit court of Logan County, in confirming the order of the commission, specifically adjudged that the orders were supported by the commission's findings of fact and the findings of fact were, in turn, supported by the evidence.

Of the two appellants, only Highway contends that the circuit court erred in confirming the order of the commission denying its application for an alternate route. Furthermore, Highway devotes so little of its argument to the order denying its application that the commission, as co-appellee, asserts that neither Terminal nor Highway have

urged that the commission erred in denying the application of Highway. As a matter of fact, however, Highway does make and argue the single contention that it was the first motor carrier to operate in the field and thus was entitled to have the first opportunity to provide extended service in the area, particularly where the extended service proposed will not produce sufficient revenue to justify the operation of two motor carriers. Highway relies upon the admitted rule that where an original carrier is capable of rendering satisfactory additional service in its field it is entitled to the first opportunity to provide any extended service contemplated. (*Chicago & West Towns Railways, Inc.* v. *Commerce Com.* 383 Ill. 20; *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580.) Contrary to Highway's contention, the rule invokèd is inapplicable here. With respect to the territory between Peoria and Lincoln, Terminal—not Highway—is the original carrier in the field. At the time the applications were filed, Highway was an existing carrier in the area and Illini, like Highway, was not a new carrier in this field but was an existing carrier. With respect to the forty-two miles between Peoria and Lincoln *via* Morton, Illini had operated over the north ten miles between Peoria and Morton since 1935, and had served the area adjacent to highway No. 121 near Tremont (six miles south of Morton) since 1935 by its operations between Pekin and Bloomington, while Highway had served the south sixteen miles between Delavan Junction and Decatur since 1941. It follows, therefore, that both Highway and Illini were existing motor carriers in the field and that neither had an exclusive priority to extend its service to the Morton-Delavan Junction area. Since Highway was not the pioneer carrier in the field but an existing carrier, and since Illini was not new in the field but was also an existing carrier, Highway had no greater rights than Illini. Consequently, Highway's existing operation in the general area did not entitle it to any preference

over Illini in the territory between Morton and Delavan Junction and, manifestly, the service proposed by Illini would more adequately serve the public convenience and necessity than the one round trip a day, without a stop at Hopedale, proposed by Highway. The asserted preference of Highway over Illini being without foundation and no other grounds for reversal being suggested, the judgment of the circuit court, to the extent it confirms the commission's order denying the application of Highway, will be affirmed.

The arguments advanced by Highway and Terminal as grounds for reversal of the judgment confirming the commission's order granting a certificate to Illini, although similar in some respects, are sufficiently different to warrant separate consideration. Terminal first contends that the service proposed by Illini is not required by public convenience and necessity. It is fundamental that orders of the commission such as the two challenged here must be based on public convenience and necessity, (Ill. Rev. Stat. 1949, chap. 111⅔, par. 56; *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200,) and the convenience and necessity required to support an order of the commission are that of the public and not an individual or group of individuals. (*Roy* v. *Commerce Com. ex rel. North Shore Connecting Railroad,* 322 Ill. 452; *Choate* v. *Commerce Com.* 309 Ill. 248.) Because both Illini and Terminal serve the area between Peoria and Morton and Highway operates between Delavan Junction and Lincoln on highway No. 121, the only area to be considered is that lying between Morton and Delavan Junction along route No. 121, including the town of Hopedale. The commission found that the territory south of Morton to Delavan Junction is a closely built-up rural area; that there are forty-six houses immediately adjacent to highway No. 121 between Morton and Delavan Junction; that Hopedale has a population of 550 persons and is located two miles east of highway No.

121 and two miles west of Terminal's right of way; that, in this area, the railroad runs approximately five miles east of Highway No. 121; that Terminal does not adequately serve the convenience and needs of persons living near highway No. 121 or in Hopedale; that persons living along highway No. 121 and in Hopedale are without any means of direct public transportation; that a considerable number of persons living in Hopedale and the surrounding territory are employed in the Peoria area or in Lincoln; that persons in the Hopedale region have need for public transportation to Peoria, Morton and Lincoln for medical, hospital, dental, banking, shopping and recreational facilities; that twenty-eight members of the public, residents of Morton, Hopedale and Lincoln, testified as to the need for bus transportation between Morton and Lincoln with a stop at Hopedale; that the public convenience and necessity requires bus service between Morton and Lincoln on State route No. 121 with a side trip to Hopedale, and that the local bus service proposed by Illini will adequately serve the public convenience and necessity for public transportation in this area. All the specific findings of the commission are supported by the evidence and, while the number of persons living in the area adjacent to highway No. 121 between Morton and Delavan, including Hopedale, is not large, we cannot say the commission's conclusion that Illini's proposed service will meet the public convenience and need in this area is unsupported by the evidence.

Terminal also contends that since it is the pioneer carrier in the field between Peoria, East Peoria, Morton, and Lincoln, the commission erred in granting a certificate to Illini without making findings of fact, supported by substantial evidence that it (Terminal) was not providing adequate service and was not willing and able to furnish adequate service. The public policy of protecting an existing carrier in its field is well established. (*Gulf Transport Co.* v. *Commerce Com.* 402 Ill. 11; *Chicago & West Towns*

*Railways, Inc.* v. *Commerce Com.* 383 Ill. 20; *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580; *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87.) Where there is an existing carrier in the field, before the commission can grant a certificate to another carrier it must first appear that the existing carrier is not rendering adequate service. (*Chicago & West Towns Railways, Inc.* v. *Commerce Com.* 383 Ill. 20; *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87.) In the present case, the commission found that between Morton and Delavan Junction the Terminal railroad ran approximately five miles east of highway No. 121; that Hopedale was two miles from the nearest stop on the Terminal line; that persons residing along highway No. 121 and in Hopedale were not being adequately served by Terminal, and that Terminal did not propose to render auxiliary bus service along highway No. 121 and to Hopedale. The order of the commission was, in part, based on these findings of fact and it can hardly be contended that the findings are not supported by substantial evidence.

On the other hand, the certificate issued to Illini does not limit its operations to local transportation in the Morton-Hopedale area along State route No. 121. Under the certificate granted by the commission, Illini now has authority to transport passengers from Peoria, East Peoria and Morton to Lincoln, in direct competition with Terminal's long-established service between these same points. The commission made no finding whatsoever that Terminal was not providing adequate service from Peoria, East Peoria and Morton to Lincoln, probably for the very good reason there is no evidence that the service of Terminal between these points was unsatisfactory. Indeed, all the evidence is directly to the contrary. Terminal operates six trains daily each way between Peoria and Lincoln, its roadbed, tracks and cars are in good condition, the seating

capacity of its trains almost always exceeds the number of passengers, and it substantially maintains its average scheduled time of one hour and five minutes for the trip. The method of regulation of public utilities in Illinois is based upon the theory of regulated monopoly rather than competition and, before one carrier is permitted to take the business of another already in the field, it must be shown that the existing carrier is rendering unsatisfactory service and is unable or unwilling to provide adequate transportation facilities and that the operations proposed by the new carrier will better serve the public convenience and necessity. (*Chicago & West Towns Railways, Inc.* v. *Commerce Com.* 383 Ill. 20; *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580; *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87.) In the absence of any evidence that Terminal, the pioneer carrier in the field, was not rendering adequate and satisfactory service from Peoria, East Peoria and Morton to Lincoln, the judgment of the circuit court, to the extent it confirms the order of the commission granting a certificate to Illini, cannot stand.

Highway, too, seeks a reversal of the same part of the judgment upon the ground that Illini is also competing with it as an existing carrier of passengers between Peoria and Lincoln. As related, Illini is already restricted from furnishing local transportation service between Delavan Junction and Lincoln to avoid competition with Highway. Since Highway itself is restricted from transporting passenger traffic originating in Peoria and destined for Lincoln, or originating in Lincoln and destined for Peoria, to avoid competition with Terminal between these points, Highway has no cause to complain that Illini's certificate, as issued, permits it to compete with Terminal. Highway further contends that Illini will compete with it (1) for interline passengers between Peoria and Lincoln and (2) for local passengers between Peoria and East Peoria and

points between Delavan Junction and Lincoln. Highway's contentions are refuted by the testimony of its own witnesses and exhibits. While it is true that Highway may lose an occasional passenger originating beyond Peoria and bound for Lincoln, or originating east or west of Lincoln and destined for Peoria, it is clear from the record that, except for local service between Peoria and Pekin, Highway's principal business is carrying through passengers between its interline connections at Peoria and Decatur. Illini cannot compete for this traffic because its service does not extend to Decatur. In addition, it is extremely doubtful that anyone from Peoria traveling to points beyond Decatur would utilize Illini's service to Lincoln and then change to Highway to Decatur when both Highway and Terminal offer direct service from Peoria to Decatur. Furthermore, if Highway has any interline business at Lincoln where Illini might offer competition, it is not shown in the record. In its brief, Illini asserts, "Obviously, Illini would not be in a position to make connections at Peoria, Illinois, and Lincoln, Illinois, for interline carriers." From this, we conclude that Illini cannot offer any competition for interline traffic between Peoria and Lincoln.

The only encroachment Illini will make upon service now furnished by Highway is between Peoria and East Peoria, on the one hand, and such points on highway No. 121 between Delavan Junction and Lincoln as Emden and Hartsburg, on the other hand, and, also, between East Peoria and Lincoln. In a test period of thirty-one days beginning on October 26, 1946, during which Highway's buses made 186 trips between Peoria and Lincoln, Highway carried only 118 passengers between the various competitive points named, or an average of less than one passenger per bus. The commission's finding that Illini's proposed service from Peoria to Lincoln *via* Morton did not substantially compete with Highway's existing service is fully substantiated by the evidence.

The part of the judgment of the circuit court confirming the commission's order denying the application of Highway is affirmed; the part of the judgment confirming the order granting a certificate to Illini without restrictions as to competition with Terminal 'from Peoria, East Peoria and Morton to Lincoln is reversed, and the cause remanded to the circuit court, with directions to further remand the cause to the Commerce Commission for the purpose of adding restrictions to Illini's certificate to prevent it from competing with Terminal's existing service from Peoria, East Peoria and Morton to Lincoln.

*Affirmed in part, reversed in part,*
*and remanded, with directions.*