THE EGYPTIAN TRANSPORTATION SYSTEM, Inc., Appellee,
*vs.* THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY *et al.* Appellants.

*Opinion filed June 16, 1926.*

1. HIGHWAYS—*State control over highways may be delegated to administrative boards.* The legislature has power to delegate its control over the roadways of the State to administrative boards.

2. PUBLIC UTILITIES—*necessity for more frequent transportation service is primarily for Commerce Commission to determine.* Whether a particular territory or section of the State requires a two-hour transportation service either by bus line or railroad, which is a more frequent service than it has been receiving, is primarily for the Commerce Commission to determine, and the court is not authorized to substitute its judgment for that of the commission where there is any substantial basis in evidence upon which to rest a finding of such necessity.

3. SAME—*railroad company not entitled to notice of application of a bus line for consent to use hard roads.* A railroad company whose track parallels a State hard road is not entitled to notice and a hearing when a bus line applies to the Department of Public Works and Buildings for use of the hard road for passenger service, even though such use may, in effect, be in competition with the railroad, as it is not the consent of said department which authorizes the business of operating the bus line but the certificate of convenience and necessity issued by the Commerce Commission, before which body the railroad company is entitled to a hearing.

4. SAME—*highway commissioners not necessary parties to proceeding before Commerce Commission to authorize bus line.* Commissioners of highways are not necessary parties to a proceeding before the Commerce Commission to authorize a bus line to operate over certain State hard roads, as there is nothing in the Road and Bridge act which gives the commissioners of highways the right to limit the character of travel on the roads.

5. SAME—*when the Commerce Commission has no authority to grant a certificate for carriage of freight over State hard roads.* The Commerce Commission has no authority to grant to a bus line a certificate of convenience and necessity for the operation of busses for "transportation of persons and property" over certain State hard roads where the consent of the Department of Public Works and Buildings merely refers to the operation of a bus line,

without specifying whether passengers or freight is to be carried and where the evidence introduced at the hearing before the commission is entirely on the question of the necessity of a bus line for passenger service.

6. SAME—*railroad company should be allowed to prove ability to render service before granting a certificate to a bus line.* To authorize an order of the Commerce Commission granting a certificate of convenience and necessity to one carrier where another is in the field it is necessary that it appear first that the existing utility is not rendering adequate service, and in a proceeding to authorize a bus line to operate on a hard road which parallels a railroad company's track, the Commerce Commission should permit the railroad company to introduce evidence that it can, if required, supply the needed service which the bus company offers, as the commission is not authorized to issue a certificate of convenience and necessity to the bus line if the railroad company can prove its ability to furnish the needed service.

APPEAL from the Circuit Court of Washington county; the Hon. J. F. GILLHAM, Judge, presiding.

JAMES A. WATTS, H. H. HOSMER, B. B. HOLSTON, and CHARLES P. HAMILL, for appellant the Louisville and Nashville Railroad Company; J. PAUL CARTER, CHARLES G. FEIRICH, and JOHN G. DRENNAN, (W. S. HORTON, of counsel,) for appellant the Illinois Central Railroad Company.

E. M. SPILLER, and GILLESPIE & GILLESPIE, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This is an appeal from an order of the circuit court of Washington county confirming an order of the Illinois Commerce Commission granting a certificate of convenience and necessity to the Egyptian Transportation System, Inc., referred to in the record as a bus line, for the transportation of persons and property. The certificate covers five

different routes,—*i. e.*, between Harrisburg and Shawnee-town, between Johnston City and Mt. Vernon, between Mt. Vernon and Nashville, between Centralia and Carbondale, and between Duquoin and Benton. The roads between these various cities or villages are practically all hard-surface roads built by the State bond issue. Numerous interests filed objections to the granting of the certificate of convenience and necessity, but only the appellants, the Illinois Central Railroad Company and the Louisville and Nashville Railroad Company, bring the cause here for review.

The Louisville and Nashville complains that the proposed bus line between Mt. Vernon and Nashville, which is on Route 15 of the State system of highways, parallels its railroad the entire distance, and between Harrisburg and Shawneetown, over Route No. 13, parallels its railroad a portion of the way. The complaint of the Illinois Central Railroad Company is that between Centralia and Carbondale and Duquoin and Benton the proposed bus line parallels its right of way. It is urged that the issuance of such certificate of convenience and necessity will ruin the local business of these railroads.

The two appellant railroad companies have filed separate briefs, but the points of law raised are practically the same in each, the cases varying somewhat on the facts. Their contentions are, first, that they are now rendering adequate local service in the territory involved, and that there is therefore no proof of public convenience and necessity upon which to base the order granting such certificate; second, that the appellant railroad companies were entitled to notice of the application to the Department of Public Works and Buildings for permission to use the hard roads, with opportunity to appear and resist the same; third, the commissioners of highways in the territory affected are necessary parties to the proceeding before the commission; fourth, the consent given by the Department of Pub-

lic Works and Buildings does not cover the carriage of property; and fifth, since appellants are public utilities for the carriage of persons and property and are in the field, they are entitled to an opportunity to provide all necessary transportation before a competing utility is given a certificate.

Concerning the first claim,—*i. e.*, that public convenience and necessity do not require additional service in the territory affected,—the evidence shows that the population of the territory from Marion north to Mt. Vernon, west to Ashley, south to Carbondale and east to Marion, and that territory extending west from Ashley to Nashville and north to Centralia, is about 80,000. The distance from Marion to Mt. Vernon is about 41 miles, Mt. Vernon to Nashville about 25 miles, from Carbondale to Centralia 56 miles, and from Duquoin to Benton 19 miles, making a total mileage of 141 miles. The Egyptian Transfer Company already has in operation busses in additional territory in this community with a mileage of 80 miles. There is no suburban population in this district. The principal occupations of the people are agriculture and mining. Much evidence was taken pertaining to train service and the cost thereof. Schedules offered in evidence show that between Centralia and Carbondale the Illinois Central train service consisted of six trains each way per day, two of which were local trains, two limited or through trains, and two stopped at certain points between Centralia and Carbondale. It showed that the daily train schedule between Duquoin and Benton contained four trains each way, all of which were either local or stopped on flag or for through passengers. The Louisville and Nashville showed by its train schedules that it was operating five trains daily in each direction between Nashville and Mt. Vernon and two trains each way per day between Shawneetown and Eldorado.

Counsel for the bus company make the argument that the people of these districts are entitled to a two-hour ser-

vice.   Beyond the statement of the president of the bus company, who qualified as an expert in railroading, there is nothing in the record to indicate that there is any demand for a two-hour service in this territory.   It is urged that the proximity of this territory to St. Louis and the inability to get to that city from the territory affected shows the necessity for the service.   This district, however, is not close to St. Louis.   What constitutes public convenience and necessity is a matter not always easy to determine.   One train each way per day met the demands a generation ago, but no one will contend that such would meet the needs of any community of average population to-day.   While this district is not suburban territory ·and the occupations of the people do not make it appear that there is in this community a necessity for two-hour service, that is a matter primarily in the province of the Commerce Commission to determine, and the court is not authorized to substitute its judgment for that of the commission where there is any substantial basis in the evidence upon which to base a finding of such necessity.   (*Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165.) We should not in this case set aside the order granting the certificate of convenience and necessity on that ground.

It is urged that to refuse to give appellants the right to appear before the Department of Public Works and Buildings and contest the issuance of a permit by that department to use the hard road for a bus line was a denial of due process of law.   Paragraph 277 of the Road and Bridge act (Smith's Stat. 1925, p. 2243,) provides that "no public utility company or person shall be granted any right, privilege or franchise in, on or along any such highway without the consent of said Department of Public Works and Buildings."   We are unable to see wherein appellants' property rights are taken away by the consent of the Department of Public Works and Buildings.   Appellants have no property rights in the hard road.   The legislature has power to dele-

gate its control over roadways of the State to administrative boards. (Black on Const. Law, sec. 55.) Assuming that appellants have a right to the passenger and freight business in the territory affected, this does not show that they have a property right in the use of the road which would entitle them to notice and opportunity to appear and resist an application for permission to use the hard road, even though such use may, in effect, be in competition with them. While the Commerce Commission is not authorized to grant a certificate of convenience and necessity over the hard roads of the State in the absence of the consent of the Department of Public Works and Buildings that such roads be so used, it is the certificate of convenience and necessity, and not the consent of the department, which authorizes the business affecting appellants. We are of the opinion that this contention cannot be sustained.

Nor were the commissioners of highways necessary parties. Section 65 of the Public Utilities act provides: "Notice shall be given to the public utility and to such other interested persons as the commission shall deem necessary in the manner provided in the preceding section." While paragraph 6 of section 50 of the Road and Bridge act (Smith's Stat. 1925, p. 2194,) provides that the commissioner of highways is "to have general charge of the roads and bridges of his town or district, to keep the same in repair and to improve them so far as practicable," there is nothing in the Road and Bridge act which gives to the commissioner of highways the right to limit the character of travel on the roads.

It is next urged that the certificate of convenience and necessity was much wider than the consent given by the Department of Public Works and Buildings. The evidence shows that the application of appellee before that department was for "consent to operate a bus line as a common carrier for the transportation of passengers and freight along the State highways therein named." The consent

of the department was "consent and permission to operate a bus line as a common carrier in, on and along State bond issue routes," naming them. The order of the Commerce Commission granting a certificate of convenience and necessity reads, for "the transportation of persons and property" between the various points therein named. There is no evidence in the record touching upon the question whether additional freight transportation service is needed. This fact, with the fact that the Department of Public Works and Buildings issued no consent to establish a freight line, shows that the Commerce Commission had no authority to grant a certificate of convenience and necessity for the carriage of property. Some evidence is offered of the intention of the appellee to carry only what is there termed "package freight," but the order of the commission contains no limitation and there is no evidence upon which to base such order. While the right to carry passengers naturally includes the right to carry their personal baggage and such bundles as the passenger is carrying with him, there is a marked distinction between such property and that commonly classed as freight. The circuit court erred in confirming the order of the commission granting a certificate of convenience and necessity for the carriage of property.

The important point raised in the case is that the appellants are utilities already in the field, and that before a competing utility is allowed to parallel their lines and take business from them they should be given an opportunity to supply all needed service. While the evidence of the appellants before the commission went largely to the question whether any necessity existed for more service than was being given, both appear in the record as ready and willing to give whatever service is required of them. The Illinois Central Railroad Company in its petition for rehearing asked an opportunity to present evidence to show that it was ready, willing and able to give as much service for

the transportation of passengers in that territory as the commission would require. This evidence was refused and the motion for rehearing was denied. The point involved here is one which goes to the very foundation of the doctrine of the law in force in this State concerning the regulation of public utilities.

Section 51 of the Public Utilities act (Smith's Stat. 1925, p. 2007,) provides: "Whenever the commission after a hearing had upon its own motion or upon complaint, shall find that any railroad or street railroad company does not run a sufficient number of trains or cars, or possess or operate sufficient motive power, reasonably to accommodate the traffic, passenger, or freight, transported by or offered for transportation to it, or does not run its trains or cars with sufficient frequency or at a reasonable or proper time having regard to safety, or does not stop the same at proper places, or does not run any train or trains, car or cars, upon a reasonable time schedule for the run, the commission shall have power to make an order directing any such railroad or street railroad company to increase the number of its trains or of its cars or its motive power or to change the time for starting its trains or cars or to change the time schedule for the run of any train or car," etc.

To authorize an order of the Commerce Commission granting a certificate of convenience and necessity to one carrier though another is in the field it is necessary that it appear first that the existing utility is not rendering adequate service. (*West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87.) The method of regulation of public utilities now in force in Illinois is based on the theory of a regulated monopoly rather than competition, and before one utility is permitted to take the business of another already in the field it is but a matter of fairness and justice that it be shown

that the new utility is in a position to render better service to the public than the one already in the field. (*Chicago Motor Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320.) It is in accord with justice and sound business economy that the utility already in the field be given an opportunity to furnish the required service. The Commerce Commission, under the Public Utilities act, has power to require additional service, and in the absence of a showing that the public interest would be better served by granting a certificate to an entirely new and competing utility, such certificate should not be granted until it be determined whether the utility already in the field can meet the requirements of public convenience and necessity. The power of the State to regulate a utility carries with it the power to protect such utility against indiscriminate competition, and such power should be exercised to that end.

Railroads have permanent road-beds and trackage which require an outlay of millions of dollars and which in turn yield large revenue to the people of the State. The average bus line is incorporated for a comparatively small sum. The railroad is of vastly greater financial responsibility. This is a matter of substantial public interest, particularly in cases of accident. It is the established policy of the law in this State that a public utility be allowed to earn a fair return on its investments. It is therefore not only unjust but poor economy to grant to a much less responsible utility company the right to compete for the business of carrying passengers by paralleling its line unless it appears that the necessary service cannot be furnished by such railroad. Appellants offer to provide whatever increase in accommodations and service is deemed essential to meet the public convenience and necessity. It is but consonant with our law regulating public utilities that they be given opportunity to do so. It is argued that appellants cannot give the necessary service except at a large loss. Such argument is beside the question involved in the

proceedings before the commission in this case. Appellants have stated that they are willing and able to give such service, and it appears clear that the commission is not justified in granting a certificate of convenience and necessity to a competing line until the utility in the field has had an opportunity to demonstrate the truth of its statement and to give the required service.

Counsel argue that it would be useless to consider the offer of appellants for the reason that railroads have no charter power to operate busses. That question is likewise not before us in this proceeding and was not before the commission. The utilities in the field are offering to give the necessary service. The public are entitled to service fully adequate to meet all reasonable demands of convenience and necessity. The utility in the field has the first right to furnish that service. If it cannot do so at a profit the public are nevertheless entitled to have such service. The fact that the method now used by the utility in the field is too expensive for more frequent service neither proves such frequent service unnecessary nor that the utility in the field may not, by adopting a cheaper method, supply the necessary service. Unless there is a showing that the utility in the field cannot supply or has not or cannot obtain authority to supply the cheaper class of service, the commission is not authorized to permit a competing utility to come into the field and take away its business.

The commission erred in refusing to permit the appellants to show in what manner they would meet the requirements as to service in these districts and in granting a certificate of convenience and necessity to appellee to operate a bus line paralleling the lines of appellants without affording appellants an opportunity to provide the required service, and the court erred in confirming its holding in that regard. For this error, and the error in granting the right to appellee to carry freight, the order of the circuit court is reversed and the certificate of convenience and necessity set

aside. The cause is remanded to the circuit court, with directions to remand the same to the Commerce Commission for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*