(No. 37037.—▮▮▮▮▮▮)

Citizens Valley View Company, Appellant, *vs.* Illinois Commerce Commission, *et al.*—(Sunny Acres Sewer & Water Co. *et al.*, Appellees.)

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

CHAPMAN AND CUTLER, of Chicago, (JOHN N. VANDER VRIES, GEORGE H. JIRGAL, and GERALD G. IMSE, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD V. HANRAHAN, Special Assistant Attorney General, of counsel,) for appellee Illinois Commerce Commission.

ALBERT E. JENNER, JR., HOWARD R. BARRON, RICHARD L. VERKLER, FRANK E. DONAHUE, and WILLIAM J. WALSH, all of Chicago, (THOMPSON, RAYMOND, MAYER & JENNER, of counsel,) for appellee Sunny Acres Sewer & Water Co.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

These proceedings began with the filing on May 23, 1960, by the Sunny Acres Sewer & Water Co. (hereinafter referred to as Sunny Acres), of a petition for a certificate of convenience and necessity to service some 800 acres of land in Du Page County with sewer and water. On June 14, 1960, Citizens Valley View Company (hereinafter referred to as Citizens Valley), sought to intervene in this proceeding, but on July 19, 1960, prior to any action by the Commission on the petition to intervene,

filed its own application to service the same area. After a hearing before a hearing examiner the Commerce Commission allowed the application of Sunny Acres and denied that of Citizens Valley. The latter filed an action against the Commission and Sunny Acres to review the Commission's order in the circuit court of Du Page County. This appeal, taken directly to this court pursuant to section 69 of "An Act concerning public utilities" (Ill. Rev. Stat. 1961, chap. 111⅔, par. 73), is from a judgment of the circuit court affirming the Commission's order.

The position of Citizens Valley here is two-fold: *first,* that as an existing and operating sewer and water utility in this area adjacent to the property requiring water and sewer service it was entitled to a certificate of public convenience and necessity as against the competing newly organized and non-operating company in the absence of any proof or specific finding by the Commission that it was not ready, willing and able to provide the needed services; and, *secondly,* that the evidence overwhelmingly established that Citizens Valley could provide the area in question with water and sewer services more efficiently, at a lower cost and at lower rates than could Sunny Acres, a newly formed company, and, therefore, the order authorizing Sunny Acres to provide such services was contrary to the evidence and law.

The property that is the subject of this suit lies near the intersection of Butterfield Road, which runs east and west, and Illinois 53, a north-south highway in Milton and York townships in Du Page County, and is hereinafter referred to as the Johnson property. It lies generally south and east of this intersection extending at varying depths for approximately two miles along Butterfield Road. Valley View subdivision is south and west of this intersection; and a subdivision known as McIntosh subdivision is to the northwest of said intersection; and another known as the Butterfield subdivision is approxi-

mately one-fourth to one-half mile east and north, abutting Butterfield Road. Just east of the Butterfield subdivision the Johnson property also extends to the north and lies on both sides of Butterfield Road. Upon 90 acres of the Johnson property lying adjacent to Butterfield subdivision and approximately one mile east of the above intersection an initial subdivision is proposed by one W. R. Johnson. The property sought to be served by Sunny Acres extends to the east another mile from the west edge of the proposed subdivision on both sides of Butterfield Road.

Sunny Acres at the time of the hearing was a new utility and had not yet commenced business. It was not serving any area nor was it authorized to serve any. It had no substantial assets, no utility management personnel, no engineers and no equipment. One existing water well located on the property owned by W. R. Johnson was, according to an engineer, adequate to form part of the initial water system. All other facilities, including water and sewer lines, would have to be newly constructed at an estimated cost of approximately $1,210,000.

Citizens Valley had been formed in 1957 and at the time of the hearing was authorized to serve the above-mentioned three subdivisions near the intersection of Butterfield Road and Route 53 and was actually rendering service to 230 homes in Valley View. This company was one of 11 Illinois subsidiaries of the Citizens Utilities Company (Delaware) operating in the Chicago area. The parent company also operated 11 other similar utility companies in other States. The Illinois companies jointly utilized twelve employees, including one manager, and five operators, as well as various trucks and other maintenance equipment. At the time of the hearing Citizens Valley water system consisted of two water wells in Valley View, a 180,000 gallon standpipe, 41,000 feet of pipe and 92 fire hydrants. Its sewer facilities included a treatment

plant, 52,910 feet of pipe and 120 manholes. In connection with its proposed facilities to serve Butterfield subdivision, which were in the process of construction, a 10-inch water line had been installed along Butterfield Road, two new wells were proposed in the subdivision itself and an oxidation pond had already been built there. In order to serve the entire 800 acres applied for Citizens Valley would have to construct additional water wells and other facilities at an estimated cost of $455,000, although the initial 90-acre subdivision could be served simply by extending the lines already proposed for the Butterfield subdivision.

In approving Sunny Acres' application the Commission found, among other things, that (1) Sunny Acres' application was filed 56 days prior to that of Citizens Valley; (2) the area proposed to be served consists of 800 acres of unsubdivided land not presently served by any water or sewer utility, 90% of which land is owned by W. R. Johnson, who is to be the major shareholder of Sunny Acres; (3) W. R. Johnson plans to subdivide in excess of 700 acres of said land commencing with an initial subdivision of 90 acres; (4) W. R. Johnson requested Sunny Acres to furnish the water distribution and sewage collection and disposal service to the entire above area, not just the 90-acre initial subdivision. Sunny Acres is ready, willing and able to furnish said facilities to the entire area and proposes to provide such service at its own expense as it is required; (5) Citizens Valley proposes to serve the above area upon the condition that all sewer and water main expense be paid by persons applying for service, who would be repaid to the extent of 40% of the actual cost of installation over a 10-year period; (6) Citizens Valley has been authorized to provide sewer and water utility service in three subdivisions lying to the west of the property in question, but is currently servicing only 230 homes in Valley View subdivision. This subdivision has a potential of 600

homes and the sewage treatment plant lying to the south of Valley View subdivision was designed to serve 600 homes. This capacity has been reduced due to existing sanitary water board standards. In the event appellant were certified to serve the area in question it would have to build a new plant or subsequently increase the capacity of its present facility; (7) the owner of the property has not requested appellant to provide utilities and will not develop said property should appellant be certified; (8) Sunny Acres has adequate financial resources available to enable it to furnish the requested services; (9) there is a present and future need for public sewer and water service in the area involved; there is no such service presently nor is there any available, and the public convenience and necessity require the granting of Sunny Acres' application; (10) Sunny Acres should be authorized to place in effect the rates, rules, regulations and conditions of service proposed by it.

The Commission's order is considered presumptively valid and cannot be set aside unless found to be clearly unreasonable or contrary to an established rule of law. (*Chicago, North Shore and Milwaukee Railroad Co.* v. *Commerce Com.* 354 Ill. 58.) Said order must, however, be supported by specific findings of fact based upon substantial evidence indicating that the basis for said order is fair and not unreasonable. *Chicago, Rock Island and Pacific Railway Co.* v. *Commerce Com.* 346 Ill. 412.

In support of its first position hereinbefore set forth Citizens Valley contends that the record establishes that it is the existing utility in the field, that it is entitled to a preference over Sunny Acres, a newcomer in the field, and that before a certificate of convenience and necessity could be issued to Sunny Acres a specific finding should have been made as to whether or not Citizens Valley was ready, willing and able to serve the area in question.

In *Chicago & West Towns Railways, Inc.* v. *Commerce Com.*, 383 Ill. 20, 26—28, this court stated "The public

policy underlying the granting of certificates of convenience and necessity to a newcomer in the field of transportation as against the rights of one already in the field and rendering service was fully considered in *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580, * * . We know of no reason why the principles announced in the foregoing decisions should be departed from. * * * In our opinion the foregoing cases conclusively establish the right of appellants to have an opportunity as a regulated monopoly to render whatever service convenience and necessity may require, and it is only when it has been demonstrated that it is unable either from financial or other reasons to properly serve the public that a competing carrier will be allowed to invade the field. As the record stands the question was raised by the answer of appellants, and also by the offer of West Towns, but no evidence was taken by the commission which would justify it in granting a certificate of convenience and necessity to a competing carrier, until it has been established the utility in the field was unable to render the service. *The commission should have made findings upon this proposition.*" (Italics added.)

In the case of *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200, we held that "It is the policy in this State, established by legislation for the regulation of all public utilities, to provide the public with efficient service at a reasonable rate by compelling an established public utility occupying a given field to provide adequate service and at the same time protect it from ruinous competition, (*Illinois Power and Light Corp.* v. *Commerce Com.* 320 Ill. 427,) and where additional or extended service is required in the interest of the public and a utility in the field makes known its willingness and ability to furnish the required service the Commerce Commission is not justified in granting a certificate of convenience and necessity to a competing utility until the utility in the field has had an

opportunity to demonstrate its ability to give the required service, (*Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580,) * * *."

A situation similar to that presented by the present case was involved in *Illinois Power and Light Corp.* v. *Commerce Com.* 320 Ill. 427, cited in the above paragraph, in that the area there in dispute was not within the territory actually certified to the existing utility, the Illinois Power and Light Corporation. We held there that this fact did not prevent the existing utility from making application for a certificate to serve other territory adjacent to one of its lines and that the principle favoring the prior utility in the field was equally applicable to such other territory. Similarly the property involved in this case has not actually been certified to Citizens Valley, but it is, as hereinbefore set forth, contiguous, except for highways, to other areas that have been certified to Citizens Valley.

"The first in the field" doctrine is not to be employed to totally prevent another from entering a contiguous area, or for that matter, even the same territory. (*Eagle Bus Lines* v. *Commerce Commission*, 3 Ill.2d 66.) The Public Utility Act itself, section 55, states that "no certificate of public convenience and necessity shall be construed as granting a monopoly or an exclusive privilege, immunity or franchise". Nevertheless, Citizens Valley, as the adjacent existing utility, would certainly have a right to seek to serve the territory and to show that it had the ability and willingness to provide the service.

Citizens Valley, by seeking to file its intervening petition in the proceedings begun by Sunny Acres to obtain a certificate to serve the area in question and by the filing of a petition to obtain a certificate itself, has demonstrated its willingness and readiness to serve this area. By submitting in detail its plans for the construction of the sewer and water facilities needed to service this territory, its proposed rates for such services, and evidence concerning

the existing conditions surrounding this territory, Citizens Valley did present to the Commerce Commission the question of its ability as the existing utility to render the services required in this area.

However, an examination of the findings of the Commission reveals that no finding as to whether or not Citizens Valley, the existing utility, was able to serve this area was made. Perhaps the Commission felt that because, as specifically found by the Commission, Sunny Acres application was filed 56 days prior to that of Citizens Valley, the latter was not entitled to any preference even though it was the existing utility in the field and that it was unnecessary to make any specific finding as to Citizen Valley's ability to serve this area. We have held that priority in the filing of an application may be considered under certain circumstances, where it appears that the purpose of the late application is to block the competitor. (*Black Hawk Motor Transit Co.* v. *Commerce Com.* 383 Ill. 57.) However, this element is entitled to little weight in the case here presented where there is nothing in the record to indicate that the subdivider at any time even attempted to obtain the needed services from the existing utility, which the record shows were immediately available to the initially planned 90-acre subdivision. Furthermore, Citizens Valley sought to intervene shortly after the filing by Sunny Acres of its application and thereafter filed its own application to serve this area, both prior to any action being taken by the Commission on Sunny Acres' application. Under these circumstances the fact that Sunny Acres filed its application first does not, in our opinion, in any way reduce the preference to which Citizens Valley as the existing utility is entitled, or relieve the Commission of the obligation of rendering specific findings relative thereto. The Commission failed to find either that Citizens Valley was able to serve the area in question or was not able to do so and for this reason alone its order must be

set aside and the cause remanded so that such a finding can be made.

In support of its second position Citizens Valley contends that the Commission did not consider specifically the merits of its plan to serve the area or its claim that it could, through the use of a large integrated system, provide the needed services more efficiently and at reduced rates. Our holding that Citizens Valley, as the existing utility, is entitled, if able, to service the disputed area will require that these matters now be considered by the Commission and findings made thereon and the arguments made in support of this position will not be considered further. However, certain of the Commission's findings that were clearly erroneous, even apart from the failure to consider adequately the question of Citizens Valley's ability to serve the property in dispute, should be commented upon further since they could conceivably form the basis for a new order in this case.

The personal business desires of the subdivider and major shareholder of one applicant, his stated refusal to subdivide unless his company is certified, and his unwillingness to pay the cost of obtaining service from the existing company in accordance with its rules previously approved by the Commission, are in no way controlling as to the public interest and should not have been taken into consideration by the Commission. Instead, even if it should be properly determined that Citizens Valley is not entitled to any preference, the Commission's order must be based exclusively upon those considerations affecting the public interest, such as the relative financial and technical capabilities of the two applicants and the nature of the facilities proposed to be constructed by each.

The Commission's special finding that Sunny Acres is financially able to furnish the needed services is not supported by substantial evidence. The only evidence submitted in this regard was Joseph Johnson's testimony that

he and his brother were financially able to build these facilities and if necessary would furnish the money to Sunny Acres. There was no disclosure as to the method the Johnsons proposed to utilize in supplying this money, whether it was to be by way of loan or otherwise. The entire sum of $1,210,000 needed to build the facilities is shown on the *pro forma* balance sheet as "accounts payable" and the company's proposed net worth is shown to be only $1,000. No provision for the retirement of this $1,210,000 obligation was disclosed in the *pro forma* operating statement or otherwise, and no interest on said debt was taken into account in arriving at the anticipated $28,000 annual net income. Obviously more evidence as to the proposed financial structure of Sunny Acres and its method of obtaining investment capital is necessary. If it is anticipated that much of this money is to be borrowed, then some consideration in the annual operating statement must be given to the payment of interest or if none is to be charged then that fact should be made known. Citizens Valley presented the consolidated balance sheet of the parent corporation as well as other evidence concerning its ability to borrow needed funds at reasonable interest rates. Yet the Commission made no finding whatever as to its financial ability to undertake the project proposed for the 800 acres here involved. This is an important factor and, even aside from the question of preference of the existing company, the Commission's failure to base its order in part upon the relative financial capabilities of the two applicants was error.

The judgment of the circuit court of Du Page County affirming the Commission's order is reversed and the cause is remanded with directions that the order be set aside and the cause remanded to the Commission for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*