NO. 5-95-0564

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              FIFTH DISTRICT

_________________________________________________________________

CITIZENS UNITED FOR RESPONSIBLE      )  Petition for Review

ENERGY DEVELOPMENT, INC. (CURED),    )  of Orders of the Illinois

                                     )  Commerce Commission.  

     Petitioner,                     )

                                     )  

v.                                   )  No. 93-0385

                                     )

ILLINOIS COMMERCE COMMISSION,        )

ILLINOIS MUNICIPAL ELECTRIC AGENCY,  )

ILLINOIS POWER COMPANY, et al.,      )

                                     )

     Respondents.                    )

_________________________________________________________________

     JUSTICE GOLDENHERSH delivered the opinion of the court:

     Petitioner, Citizens United for Responsible Energy Develop-

ment, Inc. (CURED), appeals to this court for statutory direct

review pursuant to Supreme Court Rule 335 (155 Ill. 2d R. 335) and

section 3-113 of the Code of Civil Procedure (735 ILCS 5/3-113

(West 1994)) of an order of respondent, Illinois Commerce Commis-

sion (Commission), issuing a certificate of public convenience and

necessity to respondent, Illinois Municipal Electric Agency

(Agency), for the construction of a 138-kilovolt electric transmis-

sion line near Aviston, commonly referred to as the Aviston-

Highland line, and related substation facilities, as well as the

interconnection of the transmission line with an electric substa-

tion owned by Illinois Power Company (Illinois Power), and CURED

also appeals for review of an order denying CURED's petition for

rehearing.  CURED also filed this appeal pursuant to section 10-201

of the Public Utilities Act (Act) (220 ILCS 5/10-201 (West 1994)). 

In this cause, CURED contends that: (1) the Commission's staff was

derelict by not investigating or testifying about the issue of

least-cost means, which caused the proceedings in this case to be

in violation of section 8-406(b) of the Act (220 ILCS 5/8-406(b)

(West 1994)) and the Commission's own policy and rules and

practice; (2) the Commission's finding that "construction of the

Aviston-Highland line and new substation is the least-cost means of

satisfying the service needs of Highland" is not supported by

substantial evidence based on the entire record; (3) section 4-7(b)

of the Agency's contract with Illinois Power, in which the Agency

obtained Illinois Power's silence at the certificate proceeding,

was against public policy and so tainted the certificate proceed-

ings as to require that the provision be voided and a new certifi-

cate proceeding be held; (4) because the use of Illinois Power's

existing Collinsville-Highland right-of-way as a potential route

for a new 138-kilovolt line was not studied by the Commission's

staff, the Agency, or Illinois Power, insufficient evidence existed

in the record to permit the Commission to decide whether the use of

that right-of-way would be both feasible and preferable to the

proposed Aviston-Highland line; and (5) the Commission, pursuant to

section 8-502 of the Act (220 ILCS 5/8-502 (West 1994)), has the

authority to require Illinois Power to share its East Collinsville-

Highland right-of-way with the Agency.  We reverse and remand with

directions.

                                   FACTS

     On October 18, 1993, the Agency filed a verified petition with

the Commission, seeking approval under section 11.119.1-10 of the

Illinois Joint Municipal Electric Power Act (65 ILCS 5/11-119.1-10

(West 1994)) for the construction of approximately 13 miles of 138-

kilovolt line from Illinois Power's Aviston substation in Clinton

County to a new substation south of Highland to be built by the

Agency.  The new substation would transform power from 138 kilovolt

to 34.5 kilovolt.  The petition named Illinois Power as a respon-

dent, since the proposed transmission line requires interconnection

with Illinois Power's Aviston substation.  Petitions to intervene

in this proceeding were filed by CURED, a not-for-profit corpora-

tion whose members are landowners who would be affected by the

proposed transmission line, along with the Illinois Department of

Agriculture, the Village of Aviston, and numerous potentially

affected landowners.  CURED is the only intervenor taking part in

this appeal.

     The Agency's petition was an extension of its June 1, 1990,

power-sales contract with the City of Highland.  The contract 

requires the Agency to provide all electricity needed for the

operation of Highland's electric utility during the 15-year term of

the contract.  On October 15, 1990, the Agency and Highland entered

into an addendum to that contract in which the Agency agreed to

construct facilities rated at 138 kilovolt to serve Highland within

five years of the effective date of the contract, subject to

obtaining regulatory approval.  The Agency and Highland agreed that

the Agency would own the transmission facilities to be constructed. 

The Agency also agreed to provide the funds for the total cost of

the project, with reimbursement in part by Highland.  The agreement

specifically provides that the Agency's unreimbursed cost for the

project is one-half the total cost, but in no event more than

$3,000,000.  The balance of the total cost is to be repaid by

Highland to the Agency through rates over the 15-year life of the

power-sales contract.  

     In order to satisfy the agreement and meet Highland's need for

additional transmission capacity, the Agency proposed construction

of the Aviston-Highland line.  Estimated cost of the 138-kilovolt

transmission line over the Agency's proposed route was $3,280,651. 

Estimated cost of the new Agency substation was $2,684,500.  In

order to connect the substation with the existing delivery point,

Highland will have to construct, at its own expense, 1  miles of

34.5-kilovolt electric transmission line.  This added expense was

not taken into account in the Agency's estimated cost of the

project.  

     As stated, the Agency named Illinois Power as a respondent in

its petition.  Illinois Power filed an answer to the petition on

November 9, 1993.  On January 10, 1994, the Agency and Illinois

Power entered into a coordination-and-interchange agreement. 

Section 4.7 of that agreement sets forth the responsibilities of

the Agency and Illinois Power with respect to the initial transmis-

sion facilities required to provide full transmission from the

Aviston-Highland line and provides, inter alia, as follows: (1) the

Agency and Highland shall complete the 138-kilovolt line from

Illinois Power's Aviston substation to Highland at the Agency's and

Highland's costs; (2) Illinois Power will not intervene in support

or opposition at the certificate proceeding before the Commission

relating to the line to be built for the City of Highland, nor

shall Illinois Power initiate any other action or proceeding with

the purpose or effect of interfering with the Agency's and

Highland's construction of the Aviston-Highland 138-kilovolt line;

(3) the parties shall cooperate fully with each other in planning

and constructing the proposed 138-kilovolt line and associated

substation facilities; (4) Illinois Power shall be responsible for

the operation of the Aviston-Highland 138-kilovolt line; (5) the

Agency shall be responsible for the cost of maintenance of the

line, provided that in the event that Illinois Power taps the line

in order to service its own load, Illinois Power shall subsequently

assume responsibility for the cost of maintaining the entire line;

and (6) Illinois Power shall meet Highland's full firm transmission

requirements once the Aviston-Highland 138-kilovolt line is

completed by the Agency/Highland.  Pursuant to provision (2)

recited above, Illinois Power neither supported nor opposed the

Agency's petition but remained neutral throughout the proceedings. 

     This matter was initially called for hearing on March 4, 1994,

in front of a hearing examiner.  Eight additional days of testimony

were taken between April 1994 and August 1994.  During the

hearings, no one disputed Highland's need for additional power. 

The Agency prepared a long-term forecast for peak demand and energy

consumption, which was not challenged by any party.  The parties

that participated in the hearings before the Commission were the

Agency, the Commission's staff, the Department of Agriculture,

Illinois Power, the Village of Aviston, CURED, and the individual

property owners.

     Testimony from those hearings shows that the Agency considered

two alternative transmission lines but chose the Aviston-Highland

route as the best route.  The Commission's staff supported

construction of the Aviston-Highland line but recommended a

revision to the Agency's proposed final route.  The staff took the

position that the Agency was not required to prove that its

proposed Aviston-Highland transmission line represented the least-

cost means of satisfying the service needs of customers.  In fact,

the staff did not consider the issue of least-cost means in

evaluating the Agency's proposal.  The staff attorney instructed

the staff economist, Gunnard Kluck, not to consider the issue of

least-cost means in evaluating the Agency's proposal.  Kluck

followed that order.

     CURED took the position that while there was a need to

transmit additional electrical power to Highland, construction of

the transmission line as proposed by the Agency is not convenient,

not necessary, and not the least-cost means.  CURED proposed two

alternative routes: first, a line from Lebanon Horner Park to

Highland, and second, a line from the East Collinsville substation

to Highland over Illinois Power's existing right-of-way.  The

individual landowners who presented evidence supported CURED's

position.  CURED also contended that the Agency vastly underesti-

mated the cost of the Aviston-Highland line for two reasons: (1)

the Agency's estimated cost of land acquisition at $225,000 was

ridiculously low, and (2) the Agency's estimate was outdated, since

it was estimated in 1990 and never updated.  

     The Commission agreed with CURED that before it could approve

construction of the proposed transmission line, the Agency must

demonstrate, inter alia, that the proposed construction is the

least-cost means of satisfying the service needs of its customers. 

The Commission then concluded that the Agency's proposed plan to

construct a 138-kilovolt line from Aviston to Highland constituted

the least-cost means of satisfying the service needs of Highland. 

The Commission added, "While the final costs of the [Agency's]

proposed project may turn out to be higher than the [Agency's]

latest cost estimate, there is no evidence indicating that there is

a better solution to Highland's power needs at a lesser cost."  

     On November 14, 1994, CURED filed a motion to reopen eviden-

tiary hearings.  Responses to the motion were filed by Illinois

Power and the Agency on November 22, 1994, and November 23, 1994,

respectively.  On December 1, 1994, CURED filed a reply to the

Agency's response.  On December 14, 1994, the hearing examiner, on

his own motion, reopened the record in this proceeding pursuant to

the Commission's rules of practice (83 Ill. Admin. Code §200.870

(1994)) for the purpose of scheduling a hearing to discuss the

motion to reopen evidentiary hearings.  The motion requested

additional hearings on issues pertaining to offers to landowners

made by the Agency subsequent to the close of the record.  Hearings

were subsequently held on December 21, 1994, January 9, 1995, and

January 18, 1995.  An exhibit prepared by the Agency, which

summarized offers made to landowners between September 20, 1994,

and October 28, 1994, for easements required on the Agency's

proposed route for the 138-kilovolt transmission line, was admitted

into evidence, and Kevin L. Wagner, the Agency's manager of

engineering, was recalled as a witness to answer questions

pertaining to that exhibit.  This exhibit showed that offers to

landowners for the complete right-of-way of the line totalled

$613,408.50.  None of these offers had been accepted.  The proposed

right-of-way from Aviston to Highland crosses 61 different tracts

of land owned by 50 different landowners.  

     After the hearings were completed, CURED submitted a brief

with respect to the hearing officer's proposed order.  CURED argued

that the Commission had authority under section 8-502 of the Act

(220 ILCS 5/8-502 (West 1994)) to require Illinois Power to permit

the Agency to share the East Collinsville-Highland right-of-way,

for the purpose of overbuilding the existing 34.5-kilovolt line

with a 138-kilovolt line.  The Commission adopted the hearing

examiner's proposed order without alteration.  In that order, the

Commission concluded that it was not necessary to determine whether

section 8-502 of the Act provides the Commission with authority to

require Illinois Power to permit the Agency to share the East

Collinsville-Highland right-of-way in light of sufficient grounds

in the record to reject this alternative.  The bases for rejecting

this route, as listed in the Commission's order, include: (1) the

Agency indicated that the existing East Collinsville-Highland route

does not provide necessary clearance for a 138-kilovolt line; (2)

the cost for developing this route would be approximately $6.9

million; and (3) Illinois Power indicated that overbuilding its

existing 34.5-kilovolt line from East Collinsville to Highland with

a 138-kilovolt line would adversely affect the reliability of its

system and service.  As previously stated, the Commission's order

concluded that the Agency proved that its proposed Aviston-Highland

138-kilovolt electric transmission line represented the least-cost

means of satisfying the needs of the Agency's customers.  Accord-

ingly, the Commission issued a certificate of public convenience

and necessity to the Agency for construction of the proposed line.

     CURED filed an application for rehearing on July 6, 1995.  The

Commission denied that application on July 19, 1995.  CURED now

appeals from both the Commission's order issuing the certificate of

public convenience and necessity and the Commission's order denying

CURED's application for rehearing.

                                  ISSUES

     CURED raises five specific contentions in this appeal, the

first two concerning the issue of least-cost means.  CURED specifi-

cally contends that the Commission's staff was derelict by not

investigating and not testifying concerning the issue of least-cost

means, which caused the proceedings in this case to be in violation

of section 8-406(b) of the Act (220 ILCS 5/8-406(b) (West 1992))

and the Commission's own policy and rules of practice.  CURED also

contends that the Commission's finding that the Aviston-Highland

line is the least-cost-means method of servicing Highland is not

supported by substantial evidence.  The Agency responds that (1) it

did, in fact, prove that the Aviston-Highland route is the least-

cost means of meeting Highland's electricity needs and, (2) in any

event, the Agency is a municipal corporation and, therefore, it is

exempt from the Commission's authority and absolved of the least-

cost-means requirement.  The Commission, on the other hand, agrees

that it was an error for the staff not to testify on the issue of

least-cost means, but that such error was not critical, as the

staff was not a party to the proceedings before the Commission

pursuant to section 200.40 of the Illinois Administrative Code (83

Ill. Admin. Code §200.40 (1994), which specifically provides that

staff witnesses are not parties.  Moreover, the Commission contends

that its conclusion that construction of the Aviston-Highland line

and the new substation is the least-cost means of satisfying the

service needs of Highland is fully supported by the record.  After

careful consideration, we believe that the least-cost-means

requirement is decisive in this case.  Because the least-cost-means

issue was not fully considered, the order of the Commission must be

reversed and the cause must be remanded for further proceedings.

                                     I

     A certificate of public convenience and necessity is issued to

prevent unnecessary duplication of facilities and to protect the

public from inadequate service and higher rates resulting from such

duplication, while simultaneously protecting a utility against

indiscriminate or ruinous competition.  Amalgamated Trust & Savings

Bank v. Village of Glenview, 98 Ill. App. 3d 254, 260, 423 N.E.2d

1230, 1234 (1981).  What constitutes the public convenience and

necessity is within the discretionary powers of the Commission. 

Egyptian Transportation System, Inc. v. Louisville & Nashville R.R.

Co., 321 Ill. 580, 152 N.E. 510 (1926).  In reviewing an order of

the Commission, courts are limited to a consideration of the

questions of whether the Commission acted within its authority,

whether it made adequate findings to support its decision, whether

the decision was supported by substantial evidence, and whether

constitutional rights were infringed by the decision.  Monarch Gas

Co. v. Illinois Commerce Comm'n, 51 Ill. App. 3d 892, 894-95, 366

N.E.2d 945, 947 (1977).  In reviewing an order of the Commission,

a court must not put itself in the place of the Commission and

conduct an independent investigation, nor should it substitute its

judgment for that of the Commission.  Produce Terminal Co. v.

Illinois Commerce Comm'n, 414 Ill. 582, 589, 112 N.E.2d 141, 144 

(1953).  It is well settled that great weight and deference should

be given to the Commission's orders, but such orders can be set

aside when it is clearly apparent that they are arbitrary or

unreasonable or directly contravene some established rule of law. 

Illinois Central R.R. Co. v. Franklin County, 387 Ill. 301, 56

N.E.2d 775 (1944).  The purpose of judicial review of an order of

the Commission is to keep the Commission within jurisdictional

bounds prescribed by law and also to guard against a violation of

any rights guaranteed by the constitution; therefore, courts may

reexamine facts and set aside an order of the Commission if

evidence in the record shows the order to be without substantial

foundation.  Illinois Central R.R. Co. v. Illinois Commerce Comm'n,

411 Ill. 526, 104 N.E.2d 796 (1952).

     In the instant case, the Commission concluded that before it

could approve the proposed construction, the Agency was required to

demonstrate, inter alia, that the proposed construction was the

least-cost means of satisfying the service needs of its customers. 

The Commission explained that its conclusion was based on its

interpretation of section 11-119.1-10 of the Illinois Joint

Municipal Electric Power Act (Power Act) (65 ILCS 5/11-119.1-10

(West 1994)).  This section provides that, except as otherwise

stated in the act, a municipal power agency may exercise any and

all of the powers enumerated in the Power Act, subject to the

consent and approval of the Commission, in the same manner and to

the same extent as public utilities regulated by the Commission

under the Public Utilities Act.  Three exceptions are set forth to

this requirement for Commission approval, namely: (1) contracts

between a municipal power agency and its wholesale customers; (2)

the rates to be charged by a municipal power agency to its

wholesale customers; and (3) the issuance of bonds by a municipal

power agency.  65 ILCS 5/11-119.1-10 (West 1994).  The Commission

noted that none of these three exceptions applied here.  The

Commission went on to explain that before a public utility could

construct a line as proposed, it would have to obtain a certificate

of public convenience and necessity pursuant to section 8-406(b) of

the Public Utilities Act.  This section specifically provides: 

          "(b) No public utility shall begin the construction of

     any new plant, equipment, property or facility which is not in

     substitution of any existing plant, equipment, property or

     facility or any extension or alteration thereof or in addition

     thereto, and which in the case of gas and electric utilities

     may affect the energy plan of the utility unless and until it

     shall have obtained from the Commission a certificate that

     public convenience and necessity require such construction. 

     Whenever after a hearing the Commission determines that any

     new construction or the transaction of any business by a

     public utility will promote the public convenience and is

     necessary thereto, it shall have the power to issue certifi-

     cates of public convenience and necessity.  The Commission

     shall determine that proposed construction will promote the

     public convenience and necessity only if the utility demon-

     strates: (1) that the proposed construction is necessary to

     provide adequate, reliable and efficient service to its

     customers and is the least-cost means of satisfying the

     service needs of its customers; (2) with respect to gas and

     electric utilities, that the proposed construction is consis-

     tent with the most recent energy plan adopted by the Commis-

     sion for the utility and the State, as updated; (3) that the

     utility is capable of efficiently managing and supervising the

     construction process and has taken sufficient action to ensure

     adequate and efficient construction and supervision thereof;

     and (4) that the utility is capable of financing the proposed

     construction without significant adverse financial consequenc-

     es for the utility or its customers.  If the Commission finds

     that the public convenience and necessity requires a new

     electric generating facility to be added by the utility, the

     Commission shall evaluate the proposed construction in

     comparison with the merits of a facility designed to use

     Illinois coal in an environmentally acceptable way, and shall

     consider the economic impact on employment directly or

     indirectly related to the production of coal in Illinois over

     the entire period of time affected by the proposed construc-

     tion or its alternatives."  (Emphasis added.)  220 ILCS 5/8-

     406(b) (West 1994).

The Commission explained that since no language in section 11-

119.1-10 of the Power Act discharges the Agency from meeting the

least-cost-means requirement, least-cost means must be considered. 

     The Agency has provided us with no cases to the contrary, and

we believe that the Commission's statutory interpretation in this

regard is sound.  In its application, however, we find the

Commission's conclusion, that construction of the Aviston-Highland

line and new substation is the least-cost means of satisfying the

service needs of Highland, to be without sufficient basis and

substantial foundation, as the question of least-cost means was not

even considered by the Commission's staff.  The testimony of the

Commission's staff economist, Gunnard Kluck, is highly illuminat-

ing.  

     Kluck testified that he was directed from the outset by staff

counsel to not even consider the Agency as a fully regulated

utility and not to address the issue of least-cost means.  Kluck

specifically stated: "I am aware that there are costs involved but

I did not, in my conclusion to accept IMEA's proposal, consider the

cost ***.  Let me answer the question this way.  There is--in

regard to section 8-406(b)(1) the only issue that I eliminated or

did not consider was the cost."  The record does not explain why

least-cost means was ignored and yet other requirements set forth

in section 8-406(b) were investigated and considered by the staff

in deciding to accept the Agency's proposal.  Moreover, Kluck

testified that he was presently involved in three other proceedings

concerning certificates of public convenience and necessity and in

each of those other proceedings he evaluated or considered least-

cost-means issues.  Because the issue of least-cost means was not

even considered by the staff, we find that the Commission's

determination, that the Agency's proposal constituted the least-

cost means of satisfying the service needs of the customers of

Highland, lacked sufficient foundation. 

     Also inexplicable and troublesome was the hearing examiner's

indifference to investigating the least-cost-means issue further. 

Section 200.500 of the Illinois Administrative Code specifically

provides:

     "The hearing examiner shall have authority over the conduct of

     a proceeding and the responsibility for submission of the

     matter to the Commission for decision.  The Hearing Examiner

     shall have those duties and powers necessary to these ends,

     consistent with applicable statutes and Commission rules and

     policies, including the following:

                                   * * *

          e)   At any stage of the hearing or after all parties

          have completed the presentation of their evidence to call

          upon any party or the Staff of the Commission to produce

          further evidence which is material and relevant to any

          issue."  83 Ill. Admin. Code §200.500(e) (1994).

The hearing examiner clearly had the authority to order further

investigation by the staff into the issue of least-cost means when

it became apparent that this issue was ignored.  Likewise, the

Commission is afforded wide discretion in the hearing process. 

Section 200.25 of the Illinois Administrative Code specifically

provides:

     "Section 200.25  Standards for Discretion

     All Commission discretion under this Part shall be exercised

     so as to accomplish the goals set forth in the remainder of

     this Section.

     (a)  Integrity of the fact-finding process - The principal

          goal of the hearing process is to assemble a complete

          factual record to serve as basis for a correct and le-

          gally sustainable decision."  83 Ill. Admin. Code

     §200.25(a) (1994).

To not order further investigation of the issue of cost was a clear

abuse of discretion on the part of both the hearing examiner and

the Commission. 

     We would be remiss not to point out that the numbers submitted

by the parties do not, in our estimation, clearly indicate that the

Agency's proposed line constitutes least-cost means.  The estimated

cost of the 138-kilovolt transmission line proposed by the Agency

was $3,280,651.  The estimated cost of the new Agency substation

was $2,684,500.  Together, these sums amount to nearly $6,000,000. 

It was disclosed that in order to connect the substation with the

existing delivery point, Highland will have to connect, at its own

expense, 1  miles of 34.5-kilovolt electric transmission line. 

While we are not certain what this would exactly cost, the record

discloses that the estimated cost of each mile of line is approxi-

mately $250,000.  Therefore, Highland would be faced with almost

$500,000 in additional costs for construction of this line.  

     Furthermore, it was determined that the Agency severely

underestimated the cost of obtaining easements for its proposed

line.  Originally, the estimate was $225,000 to $236,000, including

all legal costs.  However, after additional hearings, at CURED's

insistence, it was disclosed that offers of $613,408.50 had been

made to landowners in order to purchase these easements, yet not

even one easement had been obtained as a result of these offers. 

And while we will not speculate as to what it might cost to

institute eminent domain proceedings, suffice it to say this could

add considerable amounts to the final bill.  On the other hand, the

Collinsville-Highland line proposed by CURED and the landowners was

estimated to cost $6.9 million, not including the rebuilding of the

Highland substation to accommodate 138-kilovolt power.  While at

first glance the Agency's proposed route appears to cost less, upon

closer reflection, as summarized above, it is clear that the

Aviston-Highland line could well exceed the initial $6.9 million

estimate of the Collinsville-Highland line.  

     The record is obviously incomplete as to the least-cost-means

requirement.  What makes this matter even more disconcerting is the

fact that the Agency is contractually liable for only up to $3

million in the total cost of this project, while the costs will in

all likelihood exceed $6 million.  The Agency, therefore, does not

have any real or substantial interest in choosing the least-cost-

means method of transmitting electricity.  This makes the issue of

cost even more important and indicates a need for complete

investigation of the issue.  We find that the Commission abused its

discretion in not ordering additional proceedings and ordering its

staff to investigate the issue of least-cost means.  The order of

the Commission granting the Agency a certificate of public

convenience and necessity must be reversed, and the cause must be

remanded with directions to conduct a complete investigation into

the section 8-406(b) requirement of least-cost means.

                                    II

     Because of our determination on the issue of cost, we need not

address the other contentions raised by CURED.  However, we do note

great misgivings concerning section 4.7 of the coordination-and-

interchange agreement between the Agency and Illinois Power, which

required Illinois Power to remain neutral during the certificate

proceedings.  While we do not go so far as to say that such an

agreement is against public policy and negates the issuance of a

certificate of public convenience and necessity, this matter should

also be investigated thoroughly upon remand, specifically in light

of least-cost-means considerations.  

     Finally, we agree with CURED that the Commission, pursuant to

section 8-502 of the Public Utilities Act (220 ILCS 5/8-502 (West

1994)), has the authority to require Illinois Power to share its

East Collinsville-Highland right-of-way with the Agency, should

that route be deemed superior.  Section 8-502 specifically

provides:

          "§ 8-502.  Whenever the Commission, after a hearing had

     upon its own motion or upon complaint, shall find that public

     convenience and necessity require the use by one public

     utility of the conduits, subways, wires, poles, pipes or other

     property or equipment, or any part thereof, on, over or under

     any street or highway, belonging to another public utility,

     and that such use will not prevent the owner or other users

     thereof from performing their public duties nor result in

     irreparable injury to such owner or other users of such

     conduits, subways, wires, poles, pipes or other property or

     equipment, or in any substantial detriment to the service, and

     that such public utilities have failed to agree upon such use

     or the terms and conditions or compensation for the same, the

     Commission may, by order, direct that such use be permitted

     and prescribe a reasonable compensation and reasonable terms

     and conditions for such joint use.  If such use be directed,

     the public utility to whom the use is permitted shall be

     liable to the owner or other users of such conduits, subways,

     wires, poles, pipes or other property or equipment, for such

     damage as may result therefrom to the property of such owner

     or other users thereof."  220 ILCS 5/8-502 (West 1994).

The Commission declined to answer this question, finding that there

were sufficient grounds in the record for rejecting the East

Collinsville-Highland right-of-way.  However, we believe that

section 8-502 allows for such joint use, and this alternative line

should be given proper consideration on remand.  The testimony of

staff witness Jack McDonald clearly indicates that this alternative

was not given due consideration.  McDonald testified that Illinois

Power disclosed that it would not approve the sharing of the right-

of-way with the Agency and that this was a consideration he used in

determining to support the Agency's proposed route.  We believe the

East Collinsville-Highland route warrants further consideration.  

     After reviewing the entire record, we find that an impartial

investigation did not occur.  Instead, the record reveals that the

Commission focused on ways to approve the Agency's proposal,

without seriously considering any alternatives.  It may indeed be

that the Aviston-Highland line is the best choice and the least-

cost means, but the record presented to us for review leaves us

with many serious concerns, and the order lacks sufficient founda-

tion.

     For the foregoing reasons, the order of the Illinois Commerce

Commission issuing a certificate of public convenience and

necessity is reversed, and the cause is remanded to the Commission,

with directions, for further proceedings not inconsistent with this

opinion.

     Reversed and remanded with directions.

     KUEHN, P.J., concurs.

     JUSTICE WELCH, dissenting:

     I dissent.  I believe there is evidence to support the

Commission's findings and the findings of the Commission are not

against the manifest weight of the evidence and therefore should be

affirmed.

                                      NO. 5-95-0564

                                     IN THE

                          APPELLATE COURT OF ILLINOIS

                                 FIFTH DISTRICT

___________________________________________________________________________

CITIZENS UNITED FOR RESPONSIBLE      )  Petition for Review

ENERGY DEVELOPMENT, INC. (CURED),    )  of Orders of the Illinois

                                     )  Commerce Commission.

     Petitioner,                     )  

                                     )

v.                                   )  No. 93-0385 

                                     )

ILLINOIS COMMERCE COMMISSION,        )  

ILLINOIS MUNICIPAL ELECTRIC AGENCY,  ) 

ILLINOIS POWER COMPANY, et al.,      )

                                     )

     Respondents.                    )  

___________________________________________________________________________

Opinion Filed:                  December 5, 1996

___________________________________________________________________________

Justices:      Honorable Richard P. Goldenhersh, J.

                         

               Honorable Clyde L. Kuehn, P.J., 

               Concurs

                    Honorable Thomas M. Welch, J.,

               Dissents

___________________________________________________________________________

                         

Attorneys      Edward G. Maag, 720 W. Main St., Suite 100, Belleville,

for            IL  62220; John Long, 205 South Main Street, P.O. Box 209,

Petitioner     Troy, IL  62294

___________________________________________________________________________

Attorneys      Tobias G. Barry, Aplington, Kaufman, McClintock, Steele &

for            Barry, Ltd., 160 Marquette Street, LaSalle, IL 61301;

Respondents    Douglas G. Brown, Troy A. Fodor, Douglas G. Brown, P.C.,

               913 South Sixth Street, Springfield, IL 62703 (for Illinois

               Municipal Electric Agency)

               John P. Kelliher, Special Assistant Attorney General, Office

               of the General Counsel, 160 North LaSalle Street, Suite

               C-800, Chicago, IL 60601 (for Illinois Commerce Commission)

___________________________________________________________________________